**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3810
_____

JESSE POLANSKY, M.D., M.P.H.;
THE STATE OF CALIFORNIA, THE STATE OF COLO-
RADO, THE STATE OF CONNECTICUT, THE STATE OF
DELAWARE, THE DISTRICT OF COLUMBIA, THE
STATE OF FLORIDA,THE STATE OF GEORGIA, THE
STATE OF HAWAII, THE STATE OF ILLINOIS, THE
STATE OF INDIANA, THE STATE OF IOWA, THE
STATE OF LOUISIANA,THE STATE OF MARYLAND,
THE COMMONWEALTH OF MASSACHUSETTS, THE
STATE OF MICHIGAN, THE STATE OF MINNESOTA,
THE STATE OF MONTANA, THE STATE OF NE-
VADA,THE STATE OF NEW JERSEY, THE STATE OF
NEW MEXICO, THE STATE OF NEW YORK, THE
STATE OF NORTH CAROLINA, THE STATE OF OKLA-
HOMA, THE STATE OF RHODE ISLAND, THE STATE
OF TENNESSEE,THE STATE OF TEXAS, THE COM-
MONWEALTH OF VIRGINIA, THE STATE OF WASH-
INGTON, and THE STATE OF WISCONSIN

v.

EXECUTIVE HEALTH RESOURCES INC;
UNITEDHEALTH GROUP INC;
UNITED HEALTHCARE SERVICES INC; OPTUM INC;
OPTUMINSIGHT INC;
OPTUMINSIGHT HOLDINGS LLC;
COMMUNITY HOSPITAL OF THE
MONTEREY PENINSULA;
YALE NEW HAVEN HOSPITAL

UNITED STATES OF AMERICA

Jesse Polansky, M.D., M.P.H.,
Appellant.

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-12-cv-04239)
Honorable Michael M. Baylson, U.S. District Judge

_____

Argued November 18, 2020

Before: JORDAN, KRAUSE, and RESTREPO, *Circuit
Judges*

(Filed: October 28, 2021)

Nicholas C. Carullo
Stephen L. Shackelford, Jr.
Susman Godfrey
1301 Avenue of the Americas – 32nd Fl.
New York, NY   10019

Daniel L. Geyser   [ARGUED]
Haynes & Boone
2323 Victory Avenue – Ste. 700
Dallas, TX   75219

William T. Jacks
Fish & Richardson
111 Congress Avenue – Ste. 810
Austin, TX   78701
        *Counsel for Appellant*

Tejinder Singh
Goldstein & Russell
7475 Wisconsin Avenue – Ste. 850

Bethesda, MD  20814
  *Counsel for Amicus Appellant*
  *Taxpayers Against Fraud Education Fund*

Ned I. Miltenberg
National Legal Scholars Law Firm
5410 Mohican Road – Ste. 200
Bethesda, MD   20816
  *Counsel for Amicus Appellants Erwin Chemerinsky,*
  *National Whistleblowers Center, and*
  *Project on Government Oversight*

Ethan M. Posner   [ARGUED]
Christopher M. Denig
Matthew F. Dunn
Michael M. Maya
Krysten R. Moller
Covington & Burling
850 10th Street, NW
One City Center
Washington, DC   20001

Abigail A. Hazlett
Tracy Rhodes
Robin P. Sumner
Troutman Pepper Hamilton Sanders
3000 Two Logan Square – Ste. 1250
18th and Arch Streets
Philadelphia, PA   19103
  *Counsel for Appellee Executive Health Resources Inc.*

Jeffrey B. Clark   [ARGUED]
United States Department of Justice
Environment & Natural Resources Division
950 Pennsylvania Avenue, NW
Washington, DC   20530

Stephanie R. Marcus
United States Department of Justice

3

Civil Division
950 Pennsylvania Avenue, NW – Rm. 7642
Washington, DC   20530

Charles W. Scarborough
United States Department of Justice
Appellate Section
950 Pennsylvania Avenue, NW – Rm. 7244
Washington, DC   20530
        *Counsel for Appellee United States of America*

Jeffrey S. Bucholtz
Jeremy M. Bylund
King & Spalding
1700 Pennsylvania Avenue, NW – Ste. 200
Washington, DC    20006
        *Counsel for Amicus Appellee*
        *Chamber of Commerce of the United States of America*

_____

**OPINION OF THE COURT**
_____

KRAUSE, *Circuit Judge*.

The False Claims Act (FCA), 31 U.S.C. § 3729, *et seq.*, empowers not just the federal government, but also private individuals, to bring claims for fraud on the United States and to do so in the Government's name in exchange for a share of the proceeds.  These individuals, known as relators, are generally on the same side as the Government, which has the option early on to either intervene or allow the relator to move forward with the action on her own.  But what authority does the Government have when it declined to intervene at the outset and subsequently *opposes* the relator's suit?

To answer, we must resolve two key questions that have divided our sister circuits: (1) whether the Government in that

4

situation can move for dismissal without first intervening, and (2) if the Government properly moves for dismissal, what, if any, standard must it meet for its motion to be granted? For the reasons that follow, we conclude that the Government is required to intervene before moving to dismiss and that its motion must meet the standard of Federal Rule of Civil Procedure 41(a). Because we also conclude that the District Court here acted within its discretion in granting such a motion by the Government, we will affirm the Court's order of dismissal.

## I. BACKGROUND

### A. Factual Background

The False Claims Act has its roots in the Civil War, when "a series of sensational congressional investigations" uncovered widespread fraud by wartime contractors that had bilked the federal government by charging for "nonexistent or worthless goods." *United States v. McNinch*, 356 U.S. 595, 599 (1958). In response, Congress not only prohibited the making of false claims to the Government, 31 U.S.C. § 3729(a)(1), and empowered the United States to seek civil remedies, *id.* § 3730(a); it also legislated a private enforcement mechanism, not unlike the bounty hunting common in the rough-and-tumble world of the mid-nineteenth century. That is, the statute permits private individuals, acting in the name of the Government, to assert FCA claims "for the person and for the United States Government." *Id.* § 3730(b)(1). These relator-initiated lawsuits, known as *qui tam* actions, effectively deputize citizens to act as private attorneys general, compensated with a share of the money recovered.[1] *See id.* § 3730(d).

---

[1] *Qui tam* is short for "qui tam pro domino rege quam pro se imposo sequitur," which means, roughly, "who brings the action as well for the king as for himself." *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 746 n.3 (9th Cir. 1993). A relator, acting in this capacity, can receive up to 30 percent of the funds recovered. 31 U.S.C. § 3730(d)(1)-(2).

This case involves such a *qui tam* action. Relator-Appellant Dr. Jesse Polansky was an official at the Centers for Medicare and Medicaid Services (CMS) before consulting for Defendant-Appellee EHR, a "physician advisor" company that provides review and billing certification services to hospitals and physicians that bill Medicare.[2] While employed as a consultant, Polansky became concerned that EHR was systematically enabling its client hospitals to over-admit patients by certifying inpatient services that should have been provided on an outpatient basis. As alleged in the complaint he eventually filed in the District Court, EHR was causing hospitals to bill the Government for inpatient stays that were not "reasonable and necessary" for diagnosis or treatment—a statutory requirement for reimbursement under the Government's Medicare program, 42 U.S.C. § 1395y(a)(1)(A), as explicated by CMS initially in guidance, and as of 2013, in a formal regulation, *see* 42 C.F.R. § 412.3(d)(1). From at least 2006 until the filing of his amended complaint in 2019, he alleged, EHR's certifications were false and caused the submission of false claims to the Government.

## B.    Procedural History

In 2012, on the basis of those allegations, Polansky filed this FCA action. His complaint remained *in camera* and under seal for the next two years while the Government conducted its own investigation and ultimately determined it would not participate in the case. Under the FCA, "[i]f the Government elects not to proceed with the action, the person who initiated the action shall have the right to conduct the action." 31 U.S.C. § 3730(c)(3). So at that point, the complaint was unsealed and Polansky, "for [himself] and for the United States Government," continued as plaintiff. *Id.* § 3730(b)(1).

---

[2] Healthcare providers retain EHR to perform a second level of review of a doctor's initial inpatient/outpatient assessment. Specifically, EHR reviews determinations that patients do *not* qualify for inpatient status under the relevant criteria.

Over the next several years, the parties and the District Court invested considerable time and resources in the case. Once EHR's motion to dismiss was denied,[3] the District Court divided the case into two segments for case-management purposes: "Phase I" claims, covering EHR's certifications from 2009 to October 1, 2013, and "Phase II" claims, covering its certifications after October 1, 2013, the date that CMS's formal regulation went into effect. Because the complaint implicated hundreds of thousands of allegedly false claims, the District Court also decided to select a small number for a bellwether trial where "the jury would answer interrogatories," and the Court would then "enter judgment on all other claims encompassed by the jury verdict." *Polansky v. Exec. Health Res., Inc.*, 422 F. Supp. 3d 916, 919 (E.D. Pa. 2019). In anticipation of that trial, the Court designed a procedure for selecting the bellwether claims and appointed a special master, and the parties commenced discovery, focused on Phase I claims.

In February 2019, however, the case took an unexpected turn: The Government notified the parties that it intended to dismiss the entire action pursuant to 31 U.S.C. § 3730(c). Under paragraph (c)(1) of that section, a relator's ability to continue a suit he initiated is limited in various ways "[i]f the Government proceeds with the action." Those limits are spelled in out in paragraph (c)(2), including that "[t]he Government may dismiss the action notwithstanding the objections of the [relator]" so long as the relator receives notice and an opportunity to be heard on the Government's motion. 31 U.S.C. § 3730(c)(2)(A). Here, although the Government had originally opted not to proceed with the action and had not formally

---

[3] Polansky originally brought state claims against EHR, its corporate parents, and certain of its client hospitals under a number of states' FCA-equivalents. Eventually, however, he voluntarily withdrew a number of those claims, and the District Court dismissed the remainder against all defendants except EHR. The litigation that ensued therefore focused only on the FCA claims against EHR.

intervened, it pointed to § 3730(c)(2)(A) as the source of its authority to dismiss the case over Polansky's objection.

The Court stayed the proceedings while the parties negotiated with the Government. Initially, the Government acceded to Polansky's request not to dismiss his case in exchange for his filing of an amended complaint that substantially narrowed the scope of his Phase I claims. But the Government also reserved the right to reconsider, and a few months later, in August 2019, it invoked that right, and filed a motion to dismiss pursuant to § 3730(c)(2)(A). The District Court accepted that filing and, following briefing and argument, granted the Government's motion.[4] It recognized the circuit split on the issue of what standard applies to a § 3730(c)(2)(A) dismissal, but because it concluded that the Government had made an adequate showing under any of the prevailing standards, it declined to weigh in. That task now falls to us.

## II.      JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review

---

[4] At the conclusion of the hearing on the motion to dismiss, the District Court *sua sponte* raised the question of summary judgment pursuant to Federal Rule of Civil Procedure 56(f). In granting dismissal, the Court also granted partial summary judgment "independent of dismissal based on the Government's motion" against Polansky on his Phase I claims. JA 41. Because we will affirm the order of dismissal, we have no occasion to reach that ruling. And because the District Court first granted the motion to dismiss, Polansky's claims were fully disposed of, and the Court did not need to reach summary judgment. We will therefore vacate the District Court's opinion and order insofar as it addressed summary judgment.

8

over a district court's interpretation of a federal statute. *See United States v. Hodge*, 948 F.3d 160, 162 (3d Cir. 2020) (citation omitted).

## III.   DISCUSSION

Polansky challenges the District Court's dismissal on the ground that the Government lacked statutory authority to move to dismiss in the first place. He also contends that, if the Government did have that authority, its motion should have been denied on the merits under the applicable standard.

We address these arguments in three parts. We consider, first, whether the FCA requires the Government to intervene in order to seek dismissal pursuant to § 3730(c)(2)(A)—either at the first opportunity, 31 U.S.C. §3730(c)(1), or "at a later date upon a showing of good cause," *id.* § 3730(c)(3). We next address the standard governing such motions. And finally, we discuss the consequences of these holdings for the District Court's order of dismissal in this case.[5]

---

[5] Amici Dean Erwin Chemerinsky, the National Whistleblower Center, and the Project on Government Oversight (Chemerinsky Amici) argue that, even if the Government's dismissal was proper as a statutory matter, it amounted to an uncompensated taking of Polansky's property interest in the action in violation of the Takings Clause. *See* U.S. Const., amend. V, cl. 5. The thrust of this argument is that relators create a property interest by investing resources in their *qui tam* actions, and that the retroactive application to them of DOJ's 2018 guidance—reversing the Government's decades-long hands-off policy toward relator-prosecuted suits—would effect an unconstitutional taking. While the idea that a relator can obtain a property interest in a *qui tam* action is open to doubt, we need not address the argument because the Chemerinsky Amici are the only ones advancing it, and we generally avoid considering arguments raised solely in amicus briefs "where[, as here,] the parties are competently represented by counsel." *New Jersey Retail Merchs. Ass'n v. Sidamon-*

9

### A. The Government's Authority to Seek Dismissal under the FCA

We begin with the first of the questions in this area that have divided the Courts of Appeals: whether, and in what circumstances, the Government retains statutory authority to move to dismiss an FCA action, pursuant to 31 U.S.C. § 3730(c)(2)(A), if it opted not to proceed at the outset[6] and allowed the relator to move forward "for the [relator] and for the United States Government."[7] 31 U.S.C. § 3730(b)(1). The

---

*Eristoff*, 669 F.3d 374, 382 n.2 (3d Cir. 2012) (quoting *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 445 (2d Cir. 2001)).

[6] An FCA action initiated by a relator is initially filed *in camera* and under seal and served upon the Government. 31 U.S.C. § 3730(b)(2). The Government then has 60 days, extendable "for good cause shown," to investigate the claims for itself and to decide whether to "intervene and proceed with action," *id.* § 3730(b)(2), (3). If it declines the case, the relator has the option of continuing the case alone, and if the relator does, the complaint is unsealed, is served on the defendant, and the case proceeds as an otherwise-typical civil action. *Id.* § 3730(b)(4)(B); *United States ex rel. Int'l Bhd. of Elec. Workers Local Union No. 98 v. Farfield Co.*, 5 F.4th 315, 336 (3d Cir. 2021).

[7] As a threshold matter, Appellees object that this argument was not raised before the District Court, and "arguments raised for the first time on appeal are not properly preserved for appellate review." *Simko v. U.S. Steel Corp.*, 992 F.3d 198, 205 (3d Cir. 2021). But where, as here, the failure to preserve an argument was in the nature of an "inadvertent failure to raise an argument," or forfeiture, "we will reach a pure question of law even if not raised below where refusal to reach the issue would result in a miscarriage of justice or where the issue's resolution is of public importance." *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 147 (3d Cir. 2017) (internal quotation marks omitted). That is the case here.

answer turns on the interrelationship among the subsections of § 3730(c). So we begin with the text and structure of the statute, and then consider the relevant canons of statutory construction.

Section 3730(c) sets forth the rights and relationship of the Government and relator through the life of an FCA action. Because our analysis turns on the language and structure of the statute, we excerpt its relevant provisions below:

> (1) If the Government proceeds with the action . . . [the relator] shall have the right to continue as a party to the action, subject to the limitations set forth in paragraph (2).

> (2)(A) The Government may dismiss the action notwithstanding the objections of the [relator] if the [relator] has . . . [notice and] an opportunity for a hearing[.]

> (B) The Government may settle the action with the defendant notwithstanding the objections of the [relator] if the court determines . . . the proposed settlement is fair, adequate, and reasonable . . . .

> (C) Upon a showing by the Government that [the relator's] unrestricted participation . . . would interfere with or unduly delay the Government's prosecution of the case . . . the court may, in its discretion, impose limitations on the [relator's] participation . . . .

---

Whether the FCA permits the Government to dismiss a relator's action that it previously declined is a pure question of statutory interpretation; the district courts would benefit from guidance on a question that has divided the Courts of Appeals, *see infra* n.8; and resolving this question is logically antecedent to the question before us: the standard that applies when the Government seeks dismissal. We therefore exercise our discretion to excuse Polansky's forfeiture.

11

(D) Upon a showing by the defendant that [the relator's] unrestricted participation . . . would cause the defendant undue burden or unnecessary expense, the court may limit the [relator's] participation . . . .

(3) If the Government elects not to proceed with the action, the [relator] shall have the right to conduct the action. . . . When [the relator] proceeds with the action, the court, without limiting the status and rights of the [relator], may nevertheless permit the Government to intervene at a later date upon a showing of good cause.

(4) Whether or not the Government proceeds with the action, [it may seek a stay of the relator's discovery that] would interfere with [a Government investigation] . . . .

31 U.S.C. § 3730(c).

The scope of the Government's dismissal authority in this context has engendered significant debate. The parties' positions track a split among our sister circuits.[8] The

---

[8] *Compare United States ex rel. CIMZNHCA, LLC v. UCB, Inc.*, 970 F.3d 835, 844 (7th Cir. 2020) (interpreting the FCA to require intervention upon a showing of good cause before the Government can move to dismiss a relator's case under § 3730(c)(2)(A)), *and United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 519-20 (6th Cir. 2009) (concluding § 3730(c)(2)(A) "applies only when the government has decided to 'proceed[] with the action'" (quoting § 3730(c)(1))), *abrogated on other grounds by United States ex rel. Rahimi v. Rite Aid Corp.*, 3 F.4th 813 (6th Cir. 2021), *with Ridenour v. Kaiser-Hill Co.*, 397 F.3d 925, 934-35 (10th Cir. 2005) (holding the Government "is not required to intervene . . . before moving to dismiss the action under § 3730(c)(2)(A)"), *Swift v. United States*, 318 F.3d 250, 252 (D.C. Cir. 2003) (reaching the same conclusion), *and United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1145 (9th Cir. 1998) (suggesting the same understanding).

12

Government and EHR (collectively, "Appellees") ask us to follow the D.C., Ninth, and Tenth Circuits in reading this provision as a standalone grant of dismissal authority that empowers the Government to move for dismissal of the relator's action at any point in the litigation and regardless of whether it has intervened.[9] Polansky, on the other hand, presses the view of the Sixth and Seventh Circuits that Congress authorized the Government to move for dismissal under § 3730(c)(2)(A) only when it "proceeds with the action." 31 U.S.C. § 3730(c)(1). Polansky would also have us go further, to hold that the Government has that authority only if it intervenes at the outset and, having declined to do so, it is powerless to seek dismissal *even if* it subsequently intervenes.

"[B]ear[ing] in mind the fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme," *Mejia-Castanon v. Att'y Gen.*, 931 F.3d 224, 233-34

---

[9] To the extent Appellees postulate that we resolved this question in *Chang v. Children's Advocacy Center of Delaware,* 938 F.3d 384 (3d Cir. 2019), they are mistaken. The question there was whether § 3730(c)(2)(A)'s requirement for "an opportunity for a hearing on the motion" meant an in-person hearing in every case, which we held it did not, *id.* at 388. After explaining by way of background that the Government could intervene in a relator's case at the outset or allow the relator to proceed alone, *id.* at 386, we observed that "even under the latter scenario, the government may still 'dismiss the action'" pursuant to § 3730(c)(2)(A). *Id.* (quoting 31 U.S.C. § 3730(c)(2)(A)). But that passing statement cannot bear the weight Appellees would place on it. We offered no opinion one way or the other as to whether the Government was required to intervene before seeking dismissal in that "latter scenario," nor were we called upon to do so. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Grant v. Shalala*, 989 F.2d 1332, 1341 (3d Cir. 1993) (quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925)).

13

(3d Cir. 2019) (quoting *King v. Burwell*, 576 U.S. 473, 492 (2015)), we conclude Congress intended the reading adopted by the Sixth and Seventh Circuits, *i.e.*, under § 3730(c), the Government must intervene before it can move to dismiss, but it can seek leave to intervene at any point in the litigation upon a showing of good cause. Considered in context, § 3730(c)(2) is not, as Appellees would have it, a standalone provision that grants the Government unconditional authority to seek dismissal as a non-party. That authority is granted as a "limitation[]" of the relator's rights in the first paragraph "if"—and only if— "the Government proceeds with the action." 31 U.S.C. § 3730(c)(1). "If the Government elects not to proceed with the action," on the other hand, then the relator "shall have the right to conduct the action," unencumbered by the "limitations" in subparagraph (c)(2)(A) through (c)(2)(D) on that right that paragraph (c)(2) would otherwise impose. *Id.* § 3730(c)(3).

To this, Appellees object that those limitations are not nestled under paragraph (c)(1), as one might expect if they were contingent on "the Government proceed[ing] with the action." *Id.* § 3730(c)(1). Rather, they are set forth in paragraph (c)(2), a separately numbered paragraph, on par with and not structurally subordinate to paragraph (c)(1).[10] But Appellees' argument is belied by the context of the "surrounding words and provisions" of statutory language. *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 617 (3d Cir. 2015) (citation omitted). Here, the "surrounding . . . provisions" are the other

---

[10] The D.C. Circuit relied on this reasoning to conclude that the Government can seek dismissal regardless of whether it proceeds with the action. *Swift*, 381 F.3d at 251-52 (emphasizing that § 3730(c)(2) is neither "a subsection of § 3730(c)(1)" nor does it "contain language stating that it is applicable only in the context of § 3730(c)(1)"). But the observation that § 3730(c)(2) is not a subsection of § 3730(c)(1), while "true as a typographic matter," misses "how the five paragraphs of subsection (c) relate to one another in text and logic." *CIMZNHCA*, 970 F.3d at 845.

14

subparagraphs in § 3730(c)(2) that only make sense if the Government is a party in the case. Subparagraph (c)(2)(C), for example, enables the Government to limit a relator's ability to call and examine witnesses where it "would interfere with or unduly delay the Government's prosecution of the case," 31 U.S.C. § 3730(c)(2)(C), a provision that by its terms identifies the Government as a party. Subparagraph (D) grants FCA defendants a similar power to limit the relator's participation in the litigation "[u]pon a showing . . . that [such] participation . . . would be for purposes of harassment or would cause the defendant undue burden or unnecessary expense," *id.* § 3730(c)(2)(D). But this provision, too, assumes the Government is prosecuting the case because "[o]bviously a defendant cannot 'restrict the participation' of its sole adversary in a lawsuit." *United States ex rel. CIMZNHCA, LLC v. UCB, Inc.*, 970 F.3d 835, 845 (7th Cir. 2020).

That § 3730(c)(2)(A) is conditioned on the Government proceeding under paragraph (c)(1) is also apparent from another canon of statutory construction: We must "[a]ssum[e] that every word in a statute has meaning" and "avoid interpreting part of a statute so as to render another part superfluous." *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 367 (3d Cir. 2011). Yet, if we were we to conclude, as the D.C., Ninth, and Tenth Circuits do, that the Government can move to dismiss a relator's case whether or not it "proceeds with the action," 31 U.S.C § 3730(c)(1), it would render at least two provisions superfluous: The qualifier in paragraph (c)(1) that a relator's rights are "subject to the limitations set forth in paragraph (2)" when the Government "proceeds with the action," *id.*, would be unnecessary because relators would always be subject to those limitations, regardless of whether the Government "proceeds," *id.*; and paragraph (c)(4)'s description of actions the Government may take "[w]hether or not [it] proceeds with the action" would be surplusage if every provision of paragraph (2) applied "whether or not" the Government intervened. *Id.* § 3730(c)(4).

15

Though we reject Appellee's interpretation as failing to read the paragraphs of § 3730(c) as "a symmetrical and coherent regulatory scheme . . . [and] an harmonious whole," *Si Min Cen v. Att'y Gen.*, 825 F.3d 177, 192 (3d Cir. 2016) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (internal quotations omitted)), neither can we accept Polansky's reading that the Government may seek dismissal *only* if it intervened at the first opportunity. Polansky grounds that reading in the Supreme Court's description of the relator's "right to conduct the action" if "the Government elects not to proceed with it," *id.* § 3730(c)(3), as "exclusive," *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 769 (2000)), combined with paragraph (c)(3)'s qualification that, if the Government seeks leave to intervene once the suit is already underway, it must do so "without limiting the status and rights of the [relator]." 31 U.S.C. § 3730(c)(3). Because involuntary dismissal would "limit[]" the relator's "exclusive" right to conduct the action, Polansky contends, the Government intervenes pursuant to § 3730(c)(3) without the authority it originally had to seek dismissal under § 3730(c)(2)(A).

Both of Polansky's premises are flawed. First, nothing in *Stevens* compels such a reading. The Court used "exclusive" to mean that only the relator, as opposed to any other private individual, could proceed with an FCA action after the Government declines it, which the statute explicitly states in another section.[11] *See* 31 U.S.C. § 3730(b)(5); *Stevens*, 529 U.S.

---

[11] The *Stevens* Court held, among other things, that *qui tam* relators have Article III standing because the FCA partially assigns the United States's claims to them. 529 U.S. at 773-74. The word "exclusive" appears only in the Supreme Court's background explanation of the FCA's framework which, in context, reads: "[i]f the Government declines to intervene within the 60–day period, the relator has the exclusive right to conduct the action, and the Government may subsequently intervene only on a showing of 'good cause.'" *Id.* at 769 (emphasis added) (citing 31 U.S.C. § 3730(b)(4), (c)(3)).

at 769. It nowhere suggests that the relator's right to control the action is exclusive vis-a-vis the Government. Second, had Congress intended so draconian a consequence as to strip the Government of *all* ability to terminate a case brought in its name, it would not have obscured it in a clause preserving the "status and rights of the [relator]." 31 U.S.C. § 3730(c)(3). Congress "does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001).

Indeed, if anything the language of paragraph (c)(3) cuts the other way, for the statutory rights that the relator retains upon the Government's intervention can be no more or less than those originally vested by the FCA: "the right to continue as a party to the action, subject to the limitations set forth in paragraph (2)," 31 U.S.C. § 3730(c)(1), *i.e.*, subject to the Government's ability to seek dismissal pursuant to paragraph (c)(2)(A). In other words, we read § 3730(c) as a whole, as do the Sixth and Seventh Circuits, to mean that: "[I]f the Government elects not to proceed," the relator conducts the action; the Government may "intervene at a later date upon a showing of good cause;" and the relator then retains the same status and rights as if the Government originally intervened. *Id.* § 3730(c)(3). Those rights include the right to continue as a party, but "subject to the limitations set forth in paragraph (2)." *Id.* § 3730(c)(1). And under paragraph (c)(2) the Government may seek involuntary dismissal against the relator, but the relator must be provided notice and an opportunity to be heard. *Id.* § 3730(c)(2)(A).

In opposition to that reading, Appellees invoke one last canon of construction: constitutional avoidance. They argue that interpreting the statute to make intervention a prerequisite to moving to dismiss would compromise the Government's ability to control litigation brought in its name and thereby "place the FCA on constitutionally unsteady ground." *Ridenour v. Kaiser-Hill Co.*, 397 F.3d 925, 934 (10th Cir. 2005). Specifically, they contend, it risks violating the separation of

17

powers embodied in the Take Care Clause, which entrusts the Executive Branch with the duty to "take Care that the Laws be faithfully executed." U.S. Const., art. II, § 3; *see Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2205 (2020) (recognizing that, although there is no "separation of powers clause," "[this] foundational doctrine[] [is] instead evident from the Constitution's vesting of certain powers in certain bodies," among them "Article II's vesting of the 'executive Power' in the President"). As a result, they urge that we eschew any requirement of intervention to avoid "grave doubts" to the statute's constitutionality. *United States v. Palomar-Santiago*, 141 S. Ct. 1615, 1622 (2021).

We recognize that the Tenth Circuit found this argument persuasive, *see Ridenour*, 397 F.3d at 934-35, but we do not see genuine constitutional doubts to avoid. As the Seventh Circuit also concluded, showing "good cause" is neither a burdensome nor unfamiliar obligation. *See CIMZNHCA*, 970 F.3d at 848-49. It is a "uniquely flexible and capacious concept," meaning simply a "legally sufficient reason," *id.* at 846 (quoting *Good Cause*, s.v. *Cause*, Black's Law Dictionary 101 (4th pocket ed. 2011)), and it is a standard the Government routinely satisfies to extend its time to investigate the relator's case under § 3730(b)(3). *See* 31 U.S.C. § 3730(b)(3) (allowing Government to extend the time it has to decide whether to proceed with the action upon "good cause shown"); *see also CIMZNHCA*, 970 F.3d at 848 (observing that even in actual criminal cases, "the government must have 'leave of court' to dismiss the prosecution" once it is underway). And, of course, as the Seventh Circuit also noted, "avoiding offense to the separation of powers in a case that actually risks it would itself weigh heavily in any 'good cause' determination," *id.* at 847, providing an adequate forum to vindicate the prerogatives of the Executive Branch.[12]

---

[12] We also note the long history of *qui tam* actions in Anglo-American jurisprudence, which were a common feature of the legal landscape at the time of the founding. *See Stevens*, 529 U.S. at 774-77 (recounting the history of *qui tam* actions

18

In sum, while we respect the contrary view of some our sister Circuits, we agree with the Seventh Circuit that the text and structure of § 3730(c), as well as settled canons of statutory interpretation, require the Government to intervene pursuant to paragraph (c)(3), before it can exercise its authority to seek dismissal pursuant to paragraph (c)(2)(A). Once it has intervened as a party, the Government is then "proceed[ing] with the action" under paragraph (c)(1); the rights of the relator are "limit[ed]" accordingly under paragraph (c)(2); and the Government can seek an involuntary dismissal of the relator's action.

## B.     The Applicable Standard

We next consider the standard applicable to the Government's motion. Is the Government automatically entitled to dismissal, or does that decision lie in the District Court's discretion? Or in practical terms, is the "opportunity for a hearing on the motion" in § 3730(c)(2)(A) merely a forum for the relator to attempt to "convince the [G]overnment not to end the

---

in both England and at the time of the founding); *Marvin v. Trout*, 199 U.S. 212, 225 (1905) (noting that *qui tam* statutes were "in existence for hundreds of years in England, and in this country ever since the foundation of our government"); *Adams v. Woods*, 6 U.S. (2 Cranch) 336, 341 (1805) (Marshall, C.J.) ("Almost every fine or forfeiture under a penal statute, may be recovered by an action of debt [*qui tam*]."); 3 William Blackstone, Commentaries *160 (relating that forfeitures created by penal statutes "more usually . . . are given at large, to any common informer; or . . . to the people in general . . . . [I]f any one hath begun a *qui tam*, or *popular*, action, no other person can pursue it; and the verdict passed upon the defendant . . . is . . . conclusive even to the king himself."). These deep historical roots suggest that, even if the "good cause" standard reduces the Government's degree of control over a relator's suit, such a lack of direct control was not considered an unconstitutional flaw at the founding.

case," as the Government argues, Gov't Br. 28, or is it an adversarial hearing to inform the District Court's ruling on the Government's motion?

This issue, too, has divided the Courts of Appeals, *see Chang v. Children's Advocacy Center of Delaware,* 938 F.3d 384, 387 (3d Cir. 2019), which have taken three paths.[13]  While the D.C. Circuit agrees with the Government that it has an "unfettered right" to dismiss, *see Swift v. United States*, 318 F.3d 250, 252 (D.C. Cir. 2003), and the Ninth and Tenth Circuits hold it to a "rational relation" standard drawn from substantive due process jurisprudence, *see United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1145-46 (9th Cir. 1998); *Ridenour*, 397 F.3d at 936, the Seventh Circuit simply applies the Federal Rules of Civil Procedure as it would to any party, *see CIMZNHCA*, 970 F.3d at 849-50.  Today we wade into the fray, again siding with the Seventh Circuit.

Below, we discuss the standard we adopt, and then explain why we decline to follow the competing views offered by our sister Circuits.

---

[13] Amicus Taxpayers Against Fraud Education Fund (TAFEF) suggests a fourth answer—in its view, the Government "must show that dismissal is reasonable in light of all of the circumstances." TAFEF Br. 16.  It argues that the legislative history behind Congress's 1986 amendments strengthening the *qui tam* provisions demonstrates that Congress intended courts to scrutinize Government motions for reasonableness. In particular, it points to a draft provision that allowed the relator to object to dismissal by the Government and to request a hearing on a number of grounds, among them that "the settlement or *dismissal is unreasonable* in light of existing evidence."  *Id.* at 5 (quoting S. Rep. No. 99-345, at 26 (1986)). But this version of the statute was not the one ultimately enacted, and we are bound to interpret the language that Congress actually used.

### 1. The Standard We Adopt

The standard applicable to the Government's motion to dismiss follows logically from the FCA's request that the Government intervene before seeking dismissal. Having intervened, the Government becomes a party, and like any party, it is subject to the Federal Rules of Civil Procedure, including the rule governing Voluntary Dismissal.

That is Rule 41(a), which establishes different standards for a motion to dismiss depending on the procedural posture of the case. If the motion is filed before the defendant files an answer or summary judgment motion, "the plaintiff may dismiss an action without a court order" simply by filling a "notice of dismissal." Fed. R. Civ. P. 41(a)(1)(A). The effect of that notice is "automatic and immediate," such that "no order of the district court is needed to end the action," *In re Bath & Kitchen Fixtures Antitrust Litig.*, 535 F.3d 161, 165 (3d Cir. 2008). But once the action has passed the "point of no return," *id.* (quoting *Manze v. State Farm Ins. Co.*, 817 F.2d 1062, 1065 (3d Cir. 1987)), with the filing of the defendant's responsive pleading, then "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."[14] Fed. R. Civ. P. 41(a)(2). We see no reason for these standards to apply with less force in a *qui tam* action than they do in any other civil action. As this Court has recently noted, "[i]t could hardly be clearer" that Congress intended the False Claims Act to establish "civil" proceedings, *i.e.*, "lawsuits brought in accordance with the Federal Rules of Civil Procedure," *United*

---

[14] We note that, as a practical matter, the considerations that inform the Government's showing of "good cause" to intervene pursuant to § 3730(c)(3) and those that convince the District Court that dismissal is "proper" under Rule 41(a) may well converge. But, as a legal matter, these are distinct inquiries, so, while the Government may move to intervene and dismiss simultaneously, these motions must be resolved by the District Court independently and in sequence.

*States ex rel. Int'l Bhd. of Elec. Workers Local Union No. 98 v. Farfield Co.*, 5 F.4th 315, 336 (3d Cir. 2021).[15]

Of course, the FCA does add certain wrinkles. For example, while Rule 41(a) "obviously does not authorize an intervenor-plaintiff to effect involuntary dismissal of the original plaintiff's claims," *CIMZNHCA*, 970 F.3d at 850, the FCA permits the Government-as-intervenor to "dismiss the action notwithstanding the objections of the person initiating the action," 31 U.S.C. § 3730(c)(2)(A). And while a pre-answer notice of dismissal under Rule 41(a)(1)(A) is self-effectuating, "invit[ing] no response from the district court and permit[ting] no interference by it," *Bath & Kitchen*, 535 F.3d at 165, the FCA statute, even at that stage, requires the relator be given notice and an opportunity for a hearing before the case is dismissed, 31 U.S.C. § 3730(c)(2)(A). But these small modifications do not render Rule 41(a) inapplicable. To the contrary, such modifications are expressly contemplated by the Rule itself, which functions "[s]ubject to . . . any applicable federal statute." Fed. R. Civ. P. 41(a)(1)(A).

In practice, then, when the Government moves to dismiss a relator's case pursuant to § 3730(c)(2)(A), it must do so within the framework of Rule 41(a). The relator must receive notice and an opportunity for a hearing, 31 U.S.C. § 3730(c)(2)(A), and the Government must meet whatever threshold the relevant prong of Rule 41(a) requires. If the defendant has yet to answer or move for summary judgment, the Government is entitled to dismissal, Fed. R. Civ.

---

[15] That Congress intended the FCA to function hand in glove with the Federal Rules of Civil Procedure is apparent in the numerous cross-references to the Rules in the text of the statute. *See, e.g.*, 31 U.S.C. § 3730(b)(2) (requiring relator to serve materials on the Government "pursuant to Rule 4(d)(4)"); *id.* § 3730(b)(3) (directing service upon the defendant "pursuant to Rule 4"); *id.* § 3732(a) (instructing a summons in actions brought under section 3730 to be issued and served "as required by the Federal Rules of Civil Procedure").

P. 41(a)(1)(A), albeit with an opportunity for the relator to be heard,[16] 31 U.S.C. § 3730(c)(2)(A), subject only to the bedrock constitutional bar on arbitrary Government action.[17] *See CIMZNHCA*, 970 F.3d at 850-52. And if the litigation is already past that "point of no return," *Bath & Kitchen*, 535 F.3d at 165, then dismissal must be "only by court order, on terms the court considers proper." Fed. R. Civ. P. 41(a)(2).

---

[16] The interplay of Rule 41(a)(1)(A) and § 3730(c)(2)(A) leads to the "seem[ingly] counterintuitive" conclusion that a district court may hold a hearing on a pre-answer Government motion to dismiss at which it has no substantive role. *CIMZNHCA*, 970 F.3d at 850. But as the Seventh Circuit observed, Rule 41(a)'s procedures rest atop the foundation of bedrock constitutional constraints on Government action, such that even a pre-answer dismissal could not violate the relator's rights to due process or equal protection. *Id.* at 851-52 (citing *Sequoia*, 151 F.3d at 1145; *Oyler v. Boles*, 368 U.S. 448, 456 (1962)). So in "exceptional cases [these constitutional limits] could supply the grist for the hearing under § 3730(c)(2)(A)." *Id.* at 852.

[17] Polansky argues that the Government's dismissal was arbitrary and irrational because it did not "assess[] the potential benefits" of proceeding with the case, namely, the "potential *billion*-dollar recovery" it would receive if Polansky prevailed. Polansky Br. 36 (emphasis in original). But, even assuming a relator has a property interest in a *qui tam* action, *see supra* n.5, this argument misunderstands the showing of arbitrariness that due process requires. "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (internal quotation omitted). Thus, the constitutional question would not be whether the Government adequately weighed the costs and benefits of its actions, but whether there was "executive abuse of power" that "shocks the conscience." *Id.* In any event, Polanksy has not come close to meeting that exceedingly high standard.

As an important caveat, we note that, even in a typical case between private parties, dismissal at this later stage "should be allowed unless defendant will suffer some prejudice other than the mere prospect of a second lawsuit," *Estate of Ware v. Hosp. of the Univ. of Pa.*, 871 F.3d 273, 285 (3d Cir. 2017) (quoting *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 863 (3d Cir. 1990)), and that rule carries particular force, with constitutional implications in an FCA case, where it is the Government seeking to dismiss a matter brought in its name.[18] *See* 31 U.S.C. § 3730(c)(1) (requiring that, once the Government has intervened in an FCA action, "it shall have the primary responsibility for prosecuting the action"); *id.* § 3730(c)(2)(A) (allowing the Government to dismiss "notwithstanding the objections of the [relator]"); *CIMZNHCA*, 970 F.3d at 850

[18] While the FCA authorizes the Government, once having intervened, to dismiss the action, Rule 41(a)(2) vests a "broad grant of discretion" in district courts to dismiss "'on terms that the court considers proper,'" *Carroll v. E One Inc.*, 893 F.3d 139, 146 (3d Cir. 2018) (quoting Fed. R. Civ. P. 41(a)(2)), and we do not foreclose the court's ability to exercise that discretion to mitigate against extraordinary prejudice in an exceptional case. *Cf. Frank v. Crawley Petroleum Corp.*, 992 F.3d 987, 998 (10th Cir. 2021) (observing, in a typical case, that a district court addressing a Rule 41(a)(2) dismissal must "consider the equities not only facing the defendant, but also those facing the plaintiff" (internal quotation omitted)); *Estate of Ware v. Hosp. of the Univ. of Pa.*, 871 F.3d 273, 285 (3d Cir. 2017) (same). While the FCA imposes significant restrictions on such terms, *e.g.*, 31 U.S.C. § 3730(f) (disallowing the recovery of fees and costs against the Government); *cf. Int'l Bhd. of Elec. Workers Local Union No. 98*, 5 F.4th at 337 (noting that "the FCA does not authorize the award of prejudgment interest or consequential damages, which typically accompany recovery for fraud" (citing *Cook Cnty., Ill. v. U.S. ex rel. Chandler*, 538 U.S. 119, 131 (2003))), we do not rule out the possibility that others remain available, *e.g.*, *Raab v. City of Ocean City, N.J.*, 833 F.3d 286, 296 (3d Cir. 2016) (imposing court's "retention of jurisdiction" over an agreement between the parties).

(explaining that the standards set out in Rule 41(a) are limited by "any applicable background constraints on executive conduct in general"); *see also Seila Law*, 140 S. Ct. at 2205 (noting that "separation of powers" is a "foundational doctrine").

## 2.    The Alternative Approaches Among the Courts of Appeals

While we respect and have carefully weighed the considered views of other courts, we are satisfied that we have chosen the best path forward.

The D.C. Circuit has interpreted § 3730(c)(2)(A) to "give the government an unfettered right to dismiss an action." *Swift*, 318 F.3d at 252. It reached that conclusion by analogizing the Government's motion to the exercise of prosecutorial discretion, *id.*, which is reserved to the executive, and reasoning that "[n]othing in § 3730(c)(2)(A) purports to deprive the Executive Branch of its historical prerogative to decide which cases should go forward in the name of the United States." *Id.* at 253. While the Court acknowledged that § 3730(c)(2)(A)'s hearing requirement "points to a role for the courts in deciding whether the case must go forward despite the government's decision to end it," it concluded that the "function of a hearing" is "simply to give the relator a formal opportunity to convince the government not to end the case." *Id.*

Appellees (alongside amicus United States Chamber of Commerce, Commerce Br. 9-10) have pressed these points with us as well, but we are unconvinced. For one, the analogy to prosecutorial discretion is too loose a fit because *qui tam* actions involve not just the Government but also the relator in the role of "prosecutors," each with its own interest in the action. And as Congress recognized in assuring the relator a hearing on the Government's motion, those interests can be different.

In addition, reading § 3730(c)(2)(A) to give the Government "unfettered" discretion to dismiss would make it

25

incongruous with other provisions of the FCA. For example, § 3730(b)(1) requires "the court and the Attorney General [to] give written consent" for the relator to voluntarily dismiss an action. Appellees' reading thus would mean that the court had more of an oversight role when the Government and relator agreed to dismiss than it would when the Government wanted to force a dismissal against the relator's will. Likewise, because § 3730(c)(2)(B) requires a court to find a proposed settlement, to which a relator objects, to be "fair, adequate, and reasonable," Appellees' reading would require more judicial oversight of an opposed *settlement* than of a *dismissal*—despite the far more severe consequences for the relator.[19] Finally, an unfettered discretion standard creates tension with § 3730(c)(2)(A)'s provision for a hearing, which implies some role for the Article III judge; in contrast, that standard would limit the court's role to "serv[ing] . . . some donuts and coffee . . . while the parties carry on an essentially private conversation in its presence." *CIMZNHCA*, 970 F.3d at 850 (internal quotation omitted).

Polansky asks us to go the other way and adopt the rational relation test promulgated by the Ninth Circuit and followed by the Tenth, which is drawn from the former's substantive due process jurisprudence. *See Sequoia*, 151 F.3d at 1145; *Ridenour*, 397 F.3d at 936. Under this test, the court requires "(1) identification of a valid government purpose; and (2) a rational relation between dismissal and accomplishment of the

---

[19] The share of the proceeds that a relator receives, either by settlement or judgment award, is a function of the Government's role in the action. If the Government "proceeds with [the] action," the relator is entitled to between 15 and 25 percent of the recovery. 31 U.S.C. § 3730(d)(1). If the Government does not proceed, the relator receives between 25 and 30 percent of the recovery, plus attorneys' fees and costs. *Id.* § 3730(d)(2). But if the Government merely dismisses, the relator gets nothing, as there is no possibility for recovery. As one amicus puts it, "a dismissal is effectively a settlement for zero dollars." TAFEF Br. 14.

purpose." *Sequoia*, 151 F.3d at 1145. If the Government satisfies that two-prong test, "the burden switches to the relator to demonstrate that dismissal is fraudulent, arbitrary and capricious, or illegal." *Id.* (internal quotation marks omitted).

But neither does that slipper fit. The right against arbitrary government action may provide a constitutional floor, but the Federal Rules of Civil Procedure are built above it, and the Ninth Circuit's approach omits that structure entirely. And Rule 41(a) duly provides standards for voluntary dismissal, promulgated by the Supreme Court and with Congressional oversight.

In sum, our review of the alternate approaches confirms the one on which we have settled: When the Government declines to adopt a relator's FCA action, and the relator elects to proceed on his or her own, the Government must intervene pursuant to § 3730(c)(3) before it can seek to dismiss under § 3730(c)(2)(A). And when it does so, its motion to dismiss is governed by the provisions of Rule 41(a).

**C.     Whether the District Court's Grant of Dismissal was a Reasonable Exercise of Discretion**

Having clarified the operation of § 3730(c)(2)(A), we now consider the propriety of the District Court's order in this case granting the Government's motion to dismiss. While we ordinarily review a district court's grant of a motion to dismiss de novo, *see Chang*, 938 F.3d at 386-87 (citing *Fowler v. UPMC Shadyside*, 578 F.3d 203, 206 (3d Cir. 2009)), we review a district court's order under Rule 41(a)(2) for an abuse of discretion. *Carroll v. E One Inc.*, 893 F.3d 139, 145 (3d Cir. 2018).

We start with the requirement that the Government intervene under § 3730(c)(3) before seeking to dismiss the relator's case. Although the Government did not formally file such a motion before the District Court, that is no cause for remand on this record. Instead, we construe the Government's motion

27

to dismiss as including a motion to intervene because "intervention was in substance what the government sought and in form what the False Claims Act requires." *CIMZNHCA*, 970 F.3d at 849 (treating a government motion to dismiss as a motion to intervene as well); *see also Swift*, 318 F.3d at 252 (assuming that, if intervention "were . . . a requirement, we could construe the government's motion to dismiss as including a motion to intervene"). And, by thoroughly examining the Government's stated reasons for moving to dismiss and granting the motion, the District Court necessarily found the Government had shown the "legally sufficient reason" for intervening that good cause requires. *CIMZNHCA*, 970 F.3d at 846.

Moving on to the District Court's grant of dismissal, we perceive no abuse of discretion. The Court exhaustively examined the interests of the parties, their conduct over the course of the litigation, and the Government's reasons for terminating the action. It discussed, for instance, the litigation costs that Polansky's suit imposed on the Government, including "internal staff obligations," "anticipated . . . document production," and the need to expend attorney time preparing and defending depositions of CMS personnel. *Polansky*, 422 F. Supp. 3d at 928. It also noted three events that took place in the run-up to the Government's motion that justified its interest in discontinuing the action: (1) the Government and Polansky apparently disagreed on the extent to which Polansky had actually narrowed his case pursuant to their agreement; (2) EHR deposed Polansky; and (3) a mere five days before the Government sought to dismiss the case, the District Court overruled the Government's objections to the Special Master's rejection of its deliberative process privilege and ordered it to begin producing documents.

The District Court also adequately considered the prejudice to the non-governmental parties, concluding that, even though the litigation was at an advanced stage and significant resources had been expended on it by both the parties and the Court, there was little risk of prejudice to EHR because it supported the Government's motion. As for Polansky, the District

28

Court considered his argument that, by dismissing the case, the Government was "leaving billions of dollars of potential recovery on the table," but concluded that there were "genuine concerns" that "the potential benefits he highlights will be realized," both because Polansky maintained he had significantly narrowed his claims and because the prospect of success was doubtful. *Id.* at 927. The Court also noted that Polansky had engaged in potentially sanctionable conduct during the course of discovery, and that this "behavior was material and plays a role in the final disposition of this case." *Id.* at 920.

In light of this thorough examination and weighing of the interests of all the parties, and Rule 41(a)(2)'s "broad grant of discretion" to shape the "proper" terms of dismissal, we conclude that District Court did not abuse its discretion in granting the Government's motion to dismiss on the terms that it did. *Carroll*, 839 F.3d at 146. We will, therefore, affirm the dismissal of Polansky's action.