*PRELIMINARY PRINT*

VOLUME 599 U. S. PART 1

PAGES 419–452

# OFFICIAL REPORTS

OF

# THE SUPREME COURT

JUNE 16, 2023

Page Proof Pending Publication

REBECCA A. WOMELDORF

REPORTER OF DECISIONS



NOTICE: This preliminary print is subject to formal revision before the bound volume is published. Users are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D.C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

# UNITED STATES ex rel. POLANSKY *v.* EXECUTIVE HEALTH RESOURCES, INC., et al.

## CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 21–1052.   Argued December 6, 2022—Decided June 16, 2023

The False Claims Act (FCA) imposes civil liability on any person who presents false or fraudulent claims for payment to the Federal Government.   See 31 U. S. C. §§ 3729–3733.   The statute is unusual in authorizing private parties (known as relators) to sue on the Government's behalf.   Those suits—*qui tam* actions—are "brought in the name of the Government."   § 3730(b)(1).   And the injury they assert is to the Government alone.   But in one sense, a *qui tam* suit is "for" the relator as well as the Government: If the action leads to a recovery, the relator may receive up to 30% of the total.   §§ 3730(b)(1), (d)(1)–(2).

Because a relator is no ordinary plaintiff, he is subject to special restrictions.   He must file his complaint under seal and serve a copy and supporting evidence on the Government.   See § 3730(b)(2).   The Government then has 60 days (often extended for "good cause") to decide whether to "intervene and proceed with the action."   §§ 3730(b)(2)–(3).   If the Government elects to intervene during that so-called seal period, the action "shall be conducted by the Government"; otherwise, the relator gets "the right to conduct the action."   §§ 3730(b)(4)(A)–(B).   But even if the Government passes on intervention, it remains a "real party in interest," *United States ex rel. Eisenstein* v. *City of New York*, 556 U. S. 928, 930, and it retains continuing rights.   Most relevant here, the Government can intervene after the seal period ends, so long as it shows good cause to do so.   See § 3730(c)(3).

In this case, the relator—petitioner Jesse Polansky—filed a *qui tam* action alleging that respondent Executive Health Resources helped hospitals overbill Medicare.   The Government declined to intervene during the seal period, and the case spent years in discovery.   Eventually, the Government decided that the varied burdens of the suit outweighed its potential value, so it filed a motion under § 3730(c)(2)(A) (Subparagraph (2)(A) for short), which provides that "[t]he Government may dismiss the action notwithstanding the objections of the [relator]," so long as the relator received notice and an opportunity for a hearing.   The District Court granted the request, finding that the Government had thoroughly investigated the costs and benefits and come to a valid conclusion.

The Court of Appeals for the Third Circuit affirmed after considering two legal questions. First, does the Government have authority to dismiss an action under Subparagraph (2)(A) if it declined to intervene during the seal period? The Court of Appeals held that the Government has that power so long as it intervened sometime later. And the court found that the Government had satisfied that condition here. Second, what standard should a district court use in ruling on a Subparagraph (2)(A) motion? The Court of Appeals held that the proper standard comes from Federal Rule of Civil Procedure 41(a)—the rule governing voluntary dismissals in ordinary civil litigation. And here, the Third Circuit ruled, the District Court had not abused its discretion in granting the Government's motion.

*Held*:

1. The Government may move to dismiss an FCA action under § 3730(c)(2)(A) whenever it has intervened—whether during the seal period or later on. Pp. 429–435.

  (a) The Government contends that it may move to dismiss under Subparagraph (2)(A) even if it has never intervened. But Paragraph 2 (in which Subparagraph (2)(A) appears) refutes that idea. Unlike other FCA provisions, Paragraph 2 does not say that it applies when the Government is not a party. So the Government can prevail on its argument only by implication. And the implication does not fit. Subparagraphs (2)(A) and (2)(B) grant the Government uncommon power: to dismiss and settle an action over the objection of the person who brought it. That sort of authority would be odd to house in an entity that has continually declined to join a case. And subparagraphs (2)(C) and (2)(D) presuppose that the Government has intervened. Subparagraph (2)(C) enables the court to restrict the relator's role when needed to prevent interference with the "Government's prosecution of the case." And subparagraph (2)(D) allows the court to restrict the relator's participation if the defendant would otherwise suffer an "undue burden"; here again the premise is that the Government has joined the case, else a court would be limiting the role of the defendant's sole adversary.

  Zoom out to the rest of § 3730(c), and the Government's "intervention is irrelevant" view looks even weaker. Section 3730(c) addresses the "Rights of the Parties" and contains four relevant paragraphs. Paragraph 1 states that it applies only "[i]f the Government proceeds with the action"—something that the parties agree cannot happen unless the Government intervenes. And the paragraph concludes by stating that the relator may continue as a party, "subject to the limitations set forth in paragraph (2)." It thus states that when the Paragraph 1 situation obtains, the relator's role will be limited in the ways set out in Para-

graph 2.   And the Paragraph 1 situation obtains only when the Govern-
ment has intervened.   So that is also when Paragraph 2's provisions
(including the one about dismissal) kick in.   In other words, the express
intervention prerequisite of Paragraph 1 carries forward into Paragraph
2 through the "subject to" clause connecting the two.   Only when Para-
graphs 3 and 4 are reached does the necessity of intervention drop away,
as those paragraphs (unlike Paragraph 2) specify the circumstances in
which they apply: Paragraph 3 applies when "the Government elects not
to proceed," and Paragraph 4 applies "[w]hether or not the Government
proceeds."   And just to pile on a bit, the Government's alternative con-
struction creates surplusage twice over, violating the interpretive prin-
ciple that "every clause and word of a statute" should have meaning.
*Montclair* v. *Ramsdell*, 107 U. S. 147, 152.   So absent intervention,
Paragraph 2 does not apply, and the Government cannot file a motion to
dismiss.   Pp. 430–432.

    (b) A straightforward reading of the FCA refutes Polansky's posi-
tion that Paragraph 2 (as linked to Paragraph 1) applies only when the
Government's intervention occurs during the seal period.   Recall that
the Government can intervene either during the seal period or "at a
later date upon a showing of good cause."   § 3730(c)(3).   A successful
motion to intervene turns the movant into a party.   And once the Gov-
ernment becomes a party, it (alongside the relator) does what parties
do: It "proceeds with the action."   That phrase, again, is the trigger for
Paragraph 1: When the Government "proceeds with the action," it as-
sumes "primary responsibility" for the case's "prosecuti[on]."   And for
the reasons above, whenever that is true, Paragraph 2 kicks in too.   So
the right to dismiss under Subparagraph (2)(A) attends a later interven-
tion, just as it does an earlier one.

Polansky's contrary argument mainly relies on Paragraph 3, which
provides that a court approving the Government's post-seal-period in-
tervention motion may not "limit[ ] the status and rights" of the relator.
That clause, Polansky argues, prevents the court from giving the Gov-
ernment "primary responsibility" over the suit, including the power to
dismiss.   But on Polansky's reading, the Paragraph 3 clause would ef-
fectively negate Paragraphs 1 and 2.   The Government, even though
now "proceed[ing]" with the case, would not acquire the control that
Paragraphs 1 and 2 afford in that circumstance.   Polansky's construc-
tion would thus put the statute "at war with itself."   *United States* v.
*American Tobacco Co.*, 221 U. S. 106, 180.   Instead, the clause is best
read to tell the court not to impose additional, extra-statutory limita-
tions on the relator when granting the Government's motion, ensuring
that the parties will occupy the same positions as they would have if
the Government had intervened in the seal period.   And that view fits

Page Proof Pending Publication

the FCA's Government-centered purposes. Congress knew that circumstances could change and new information come to light. So Congress enabled the Government, in the protection of its own interests, to reassess litigation of *qui tam* actions and join a case without having to take a back seat to its co-party relator. Pp. 432–435.

2. In assessing a motion to dismiss an FCA action over a relator's objection, district courts should apply the rule generally governing voluntary dismissal of suits in ordinary civil litigation—Rule 41(a). The Federal Rules are the default rules in civil litigation, and nothing warrants a departure from them here. To the contrary, the FCA cross-references the Rules, and this Court has made clear that other Rules also apply in the ordinary course of FCA litigation. The application of Rule 41 in the FCA context will differ in two ways from the norm. First, the FCA requires notice and an opportunity for a hearing before a Subparagraph (2)(A) dismissal can take place. Second, in the FCA context, the set of interests the court should consider in ruling on a post-answer motion is more likely to include the relator's, as the relator may have committed substantial resources to the action. But even so, the Third Circuit was right to note that the Government's motion to dismiss will satisfy Rule 41 in all but the most exceptional cases. And here, the Government gave good grounds for thinking that this suit would not do what all *qui tam* actions are supposed to do: vindicate the Government's interests. Absent some extraordinary circumstance, that sort of showing is all that is needed for the Government to prevail on a motion to dismiss. Pp. 435–438.

17 F. 4th 376, affirmed.

KAGAN, J., delivered the opinion of the Court, in which ROBERTS, C. J., and ALITO, SOTOMAYOR, GORSUCH, KAVANAUGH, BARRETT, and JACKSON, JJ., joined. KAVANAUGH, J., filed a concurring opinion, in which BARRETT, J., joined, *post*, p. 442. THOMAS, J., filed a dissenting opinion, *post*, p. 442.

*Daniel L. Geyser* argued the cause for petitioner. With him on the briefs were *Andrew W. Guthrie, Angela M. Oliver, Stephen Shackelford, Jr., Mark Musico, Nicholas C. Carullo*, and *William T. Jacks.*

*Frederick C. Liu* argued the cause for the United States. With him on the brief were *Solicitor General Prelogar, Principal Deputy Assistant Attorney General Boynton, Deputy Solicitor Stewart, Charles W. Scarborough*, and *Stephanie R. Marcus.*

*Mark W. Mosier* argued the cause for respondents. With him on the brief were *Ethan M. Posner, Christopher M. Denig, Matthew F. Dunn, Krysten Rosen Moller, Daniel G. Randolph, Sara Suwanda, Matthew M. Shors*, and *S. Conrad Scott.**

JUSTICE KAGAN delivered the opinion of the Court.

The False Claims Act (FCA), 31 U. S. C. §§ 3729–3733, imposes civil liability on any person who presents false or fraudulent claims for payment to the Federal Government. The statute is unusual in authorizing private parties—known as relators—to sue on the Government's behalf. When a relator files a complaint, the Government gets an initial opportunity to intervene in the case. If the Government does so, it takes the lead role. If not, that responsibility falls to the relator, the only person then pressing the suit. But even when that is so, the Government retains certain rights, including the right to intervene later upon a showing of good cause.

The questions presented here concern the Government's ability to dismiss an FCA suit over a relator's objection. Everyone agrees that if the Government intervenes at the suit's start, it can later move to dismiss. But the parties dispute whether, or in what circumstances, the same is true if the Government declines its initial chance to intervene. And the parties disagree as well about the standard district

————————
*Briefs of *amici curiae* urging reversal were filed for Brutus Trading, LLC, by *Patrick M. McSweeney* and *Robert J. Cynkar*; and for Taxpayers Against Fraud Education Fund by *Tejinder Singh* and *David J. Chizewer*.

Briefs of *amici curiae* urging affirmance were filed for Advanced Medical Technology by *Douglas H. Hallward-Driemeier*; for the Chamber of Commerce of the United States of America by *Jeffery S. Bucholtz, Jeremy M. Bylund*, and *Andrew R. Varcoe*; for Pharmaceutical Research and Manufacturers of America by *Lucas C. Townsend, James C. Stansel*, and *Melissa B. Kimmel*; and for the Washington Legal Foundation by *Kristen Graham Koehler, Joshua J. Fougere, Cory L. Andrews*, and *John M. Masslon II*.

424     UNITED STATES ex rel. POLANSKY *v.* EXECUTIVE
HEALTH RESOURCES, INC.

Opinion of the Court

courts should use in deciding whether to grant a Government motion to dismiss.

Today, we hold that the Government may seek dismissal of an FCA action over a relator's objection so long as it intervened sometime in the litigation, whether at the outset or afterward. We also hold that in handling such a motion, district courts should apply the rule generally governing voluntary dismissal of suits: Federal Rule of Civil Procedure 41(a).

I

A

The FCA dates to the Civil War, when a Congressional committee uncovered "stupendous abuses" in the sale of provisions and munitions to the War Department. H. R. Rep. No. 2, 37th Cong., 2d Sess., pt. 2, p. II (1861). Testimony before Congress "painted a sordid picture of how the United States had been billed for nonexistent or worthless goods, charged exorbitant prices for goods delivered, and generally robbed in purchasing the necessities of war." *United States* v. *McNinch*, 356 U. S. 595, 599 (1958). To put a stop to the plunder—and more generally, to "protect the funds and property of the Government"—Congress enacted the FCA. *Rainwater* v. *United States*, 356 U. S. 590, 592 (1958). The Act, then as now, imposed civil liability for many deceptive practices meant to appropriate government assets.

From the start, the FCA has been enforced through a unique public-private scheme. Federal prosecutors may of course sue an alleged violator, all on their own. See 31 U. S. C. §3730(a). But private parties—again, relators— may also sue, in so-called *qui tam* actions. Those suits are "brought in the name of the Government." §3730(b)(1).[1]

---

[1] That is why the caption in this and other *qui tam* suits designates the plaintiff as "United States *ex rel.* [the private party's name]." *Ex rel.* is short for the Latin term "*ex relatione*," which means "by or on the relation of." Black's Law Dictionary 727 (11th ed. 2019). So here, the caption

Opinion of the Court

And the injury they assert is exclusively to the Government. A *qui tam* suit, this Court has explained, alleges both an "injury to the [Government's] sovereignty arising from violation of its laws" and an injury to its "proprietary [interests] resulting from [a] fraud." *Vermont Agency of Natural Resources* v. *United States ex rel. Stevens*, 529 U. S. 765, 771 (2000). But in one important sense, a *qui tam* suit is, as the statute puts it, "for" both the relator and the Government. §3730(b)(1) (describing the action as "for the person and for the United States"). The FCA, we have explained, "effect[s] a partial assignment of the Government's" own damages claim. *Id.*, at 773. If the action leads to a recovery, the relator may receive up to 30% of the total. See §§3730(d)(1)–(2).

Because the relator is no ordinary civil plaintiff, he is immediately subject to special restrictions. He must file his complaint under seal, and serve both "[a] copy" and supporting "material evidence" on the Government alone. §3730(b)(2). The Government then has 60 days (often extended for "good cause") to decide whether to "intervene and proceed with the action." §§3730(b)(2)–(3). If the Government, during that so-called seal period, elects to intervene, the relator loses control: The action then "shall be conducted by the Government," though the relator can continue as a party in a secondary role. §§3730(b)(4)(A), (c)(1). Only if the Government passes on intervention does the relator "have the right to conduct the action." §3730(b)(4)(B).

And even then, the relator is not home free. The Government, after all, is a "real party in interest" in a *qui tam* action. *United States ex rel. Eisenstein* v. *City of New York*, 556 U. S. 928, 930 (2009). So Congress gave the Government continuing rights in the action—not least the right to the lion's share of the recovery. Most relevant here, the

refers to the United States, by (or in relation to allegations brought by) Jesse Polansky, whom you will meet in a little while.

426     UNITED STATES EX REL. POLANSKY *v.* EXECUTIVE
HEALTH RESOURCES, INC.

Opinion of the Court

Government can intervene after the seal period ends, so long as it shows good cause to do so.   See § 3730(c)(3).

The main issue here is whether the Government, if it has declined to intervene during the seal period, retains yet another right: the right to dismiss a *qui tam* action over the relator's objection.   The FCA gives the Government unilateral authority to dismiss in at least some circumstances. Section 3730(c)(2)(A)—which we'll call Subparagraph (2)(A) for short—provides that "[t]he Government may dismiss the action notwithstanding the objections of the [relator]," so long as the relator has received notice of the motion and an opportunity for a hearing.   Nothing in the statute, however, expressly states whether (or when) that authority survives the Government's decision to let the seal period lapse without intervening.

The competing arguments on that score hinge significantly on surrounding provisions—more precisely, on how Subparagraph (2)(A) fits into the rest of § 3730(c).   That subsection addresses the "Rights of the Parties"—the Government, the relator, and (more briefly) the defendant.   It contains four relevant paragraphs, which we summarize in order.   (Those who believe in verification may refer to this opinion's appendix, which lays out all of § 3730's relevant text.)   A helpful hint to start with: You might want to pay attention to what each paragraph says—or not—about when it applies.

Paragraph 1 applies, as its first clause states, "[i]f the Government proceeds with the action."   § 3730(c)(1).   In that event, the Government "shall have the primary responsibility for prosecuting the action, and shall not be bound by an act of the [relator]."   *Ibid.*   The relator still can "continue as a party"—file motions, conduct discovery, and so forth—but only "subject to the limitations set forth in paragraph (2)."   *Ibid.*

Paragraph 2 then spells out certain rights of the Government.   You have already seen Subparagraph (2)(A), enabling the Government to dismiss an action over the relator's objec-

tion (after notice and opportunity for a hearing). Subparagraph (2)(B) is similar. It allows the Government to settle an action "notwithstanding [the relator's] objections," so long as the court finds after a hearing that the settlement is fair and reasonable. §3730(c)(2)(B). Finally, subparagraphs (2)(C) and (2)(D) allow the court to limit the relator's "participation" in the case—because (among other reasons) it would "interfere with" the "Government's prosecution of the case" or "cause the defendant undue burden." §§3730(c)(2)(C)–(D).

Next, Paragraph 3 applies, as its first clause states, "[i]f the Government elects not to proceed with the action." §3730(c)(3). In that event, the relator "shall have the right to conduct the action." *Ibid.* But a caveat immediately follows. The Government, as noted above, may "intervene at a later date"—*i. e.*, after the seal period—"upon a showing of good cause." *Ibid.*; see *supra*, at 425–426. And last, there is a caveat to that caveat: In granting a later intervention motion, the "court [may not] limit[ ] the status and rights" of the relator. §3730(c)(3).

Finally, Paragraph 4 applies, as its first clause states, "[w]hether or not the Government proceeds with the action." §3730(c)(4). That provision enables the Government to obtain a stay of the relator's discovery if it would interfere with the Government's investigation or prosecution of a related legal matter.

And so to recap, focusing on the matter we suggested you attend to. See *supra*, at 426. Paragraph 1 applies "[i]f the Government proceeds with the action." Paragraph 3 applies "[i]f the Government elects not to proceed with the action." Paragraph 4 applies "[w]hether or not the Government proceeds with the action." And Paragraph 2? It is not like the others. Though granting the Government important rights—including the right to dismissal over the relator's objection—Paragraph 2 does not specify when it applies. And that is the mystery at this case's heart.

428    UNITED STATES EX REL. POLANSKY *v.* EXECUTIVE
HEALTH RESOURCES, INC.

Opinion of the Court

B

With the game thus afoot, we turn to the facts—though there are only a few you need to know. Petitioner Jesse Polansky is a doctor who worked for respondent Executive Health Resources (EHR), a company that helped hospitals bill the United States for Medicare-covered services. In 2012, Polansky filed (under seal, as required) a *qui tam* action against EHR. The complaint alleged that EHR was enabling its clients to cheat the Government—essentially, by charging inpatient rates for what should have been outpatient services. After reviewing Polansky's evidence, the Government declined to intervene during the seal period. The case then spent years in discovery, with EHR demanding both documents and deposition testimony from the Government. As its discovery obligations mounted and weighty privilege issues emerged, the Government assessed and reassessed whether the suit should go forward. By 2019, it had decided that the varied burdens of the suit outweighed its potential value. The Government therefore filed a motion under Subparagraph (2)(A) to dismiss the action over Polansky's objection. The District Court granted the request, finding that the Government had "thoroughly investigated the costs and benefits of allowing [Polansky's] case to proceed and ha[d] come to a valid conclusion based on the results of its investigation." 422 F. Supp. 3d 916, 927 (ED Pa. 2019).

The Court of Appeals for the Third Circuit affirmed after considering two legal questions. First, does the Government have authority to dismiss an action under Subparagraph (2)(A) if it declined to intervene during the seal period? The Court of Appeals held that the Government has that power so long as it intervened sometime later. See 17 F. 4th 376, 383–388 (2021). And here, the Third Circuit found, the Government had satisfied that condition because its motion to dismiss was reasonably construed to include a motion to intervene, which the District Court had implicitly

granted.  See *id.*, at 392–393.[2]  Second, what standard should a district court use in ruling on a Subparagraph (2)(A) motion to dismiss?  The Court of Appeals held that the proper standard comes from Federal Rule 41(a)—the rule governing voluntary dismissals in ordinary civil litigation. See *id.*, at 389–391.  And here, the Third Circuit ruled, the District Court's decision, which was based on a "thorough examination" of the interests that Rule 41 makes relevant, was not an abuse of discretion.  *Id.*, at 393.

Because both those questions have occasioned circuit splits, we granted certiorari.  596 U. S. —— (2022); see 17 F. 4th, at 384, n. 8, 388 (outlining the splits).  We now affirm the Third Circuit across the board.

## II

To show why the Third Circuit is right on the first question presented—about when the Government can make what we'll call a (2)(A) motion—we proceed in two stages, corresponding to two sets of arguments.  None of the parties here agrees with the Third Circuit.  On the one side, the Government and EHR contend that a (2)(A) motion is always permissible, even if the Government has never intervened. Their argument is mainly one from silence: Because Paragraph 2 does not explicitly say when it applies—*e. g.*, when the Government "proceeds with the action" or when it "elects not to"—the provision must apply all the time. §§ 3730(c)(1), (3).  On the other side, Polansky (joined by the

---

[2] As noted above, post-seal intervention requires a showing of good cause.  See *supra*, at 427.  Here, the Third Circuit explained that "showing 'good cause' is neither a burdensome nor unfamiliar obligation," but instead "a uniquely flexible and capacious concept, meaning simply a legally sufficient reason."  17 F. 4th, at 387 (internal quotation marks omitted).  And applying that standard, the Third Circuit found that the Government's request to dismiss the suit—based on its weighing of discovery burdens against likelihood of success—itself established good cause to intervene.  See *id.*, at 392–393.  Polansky does not challenge that conclusion.

430    UNITED STATES EX REL. POLANSKY *v.* EXECUTIVE
HEALTH RESOURCES, INC.

Opinion of the Court

dissent) contends that the Government can make a (2)(A) motion only if it has intervened during the seal period.  Polansky understands the dismissal power to arise only when the Government assumes primary responsibility for the action.  And he does not think that occurs—rather, he thinks the relator remains in control—if the Government intervenes later on.  To work our way through this thicket, we address first the Government's (and EHR's) theory, then Polansky's (and the dissent's).  We come out the other end in the same place as the Third Circuit: Paragraph 2 (like Paragraph 1) applies only if the Government has intervened, but the timing of the intervention makes no difference.  So the Government can file a (2)(A) motion to dismiss whenever (whether during the seal period or later) it has intervened.

A

Even taken alone, Paragraph 2 refutes the idea that it applies regardless of intervention.  When the Government has chosen not to intervene in a *qui tam* suit, it is (by definition) not a party.  See *Eisenstein,* 556 U. S., at 933.  And non-parties typically cannot do much of anything in a lawsuit.  To be sure, a *qui tam* action is an unusual creature.  Even as a non-party, the Government retains an interest in the suit, and possesses specified rights.  See, *e. g.,* § 3730(c)(4) (the right to get a stay of some discovery); § 3730(d)(2) (the right to share in the recovery).  But Paragraph 2, unlike other FCA provisions, does not say that it applies when the Government is a non-party.  See *supra,* at 426–427.  So the Government can prevail on its argument only by implication.  And the implication does not fit.  The paragraph's first two provisions (Subparagraphs (2)(A) and (2)(B)) grant the Government uncommon, even extraordinary, power: to dismiss and settle an action over the objection of the person who brought it.  That sort of authority would be odd to house in an entity that is taking no part in—indeed, has continually

declined to join—a case. And still more conclusive, the paragraph's next two provisions presuppose that the Government has in fact intervened. Subparagraph (2)(C) enables the court to restrict the relator's role when needed to prevent interference with—wait for it—the "Government's prosecution of the case." And subparagraph (2)(D) allows the court to restrict the relator's participation if the defendant would otherwise suffer an "undue burden." The premise is again that the Government has joined the case—else a court would be limiting the role of the defendant's sole adversary.

Zoom out to the rest of §3730(c), and the Government's "intervention is irrelevant" view looks even weaker. Above Paragraph 2 is (you guessed it) Paragraph 1, which begins and ends in telling ways. Recall that Paragraph 1 starts by announcing that it applies only "[i]f the Government proceeds with the action"—something that (everyone agrees) cannot happen unless the Government intervenes. See *supra*, at 426. In that event, the paragraph says, the Government assumes "primary responsibility" for the suit. But still, the paragraph concludes, the relator may continue as a party, "subject to the limitations set forth in paragraph (2)." That last "subject to" phrase links Paragraph 2 to Paragraph 1. It says that when the Paragraph 1 situation obtains, the relator's continuing role will be limited in the ways set out in Paragraph 2. And once again, the Paragraph 1 situation obtains only when the Government has intervened. So that is also when Paragraph 2's provisions (including the one about dismissal) kick in. In other words, the express intervention prerequisite of Paragraph 1 carries forward into Paragraph 2 through the "subject to" clause connecting the two. Only when Paragraphs 3 and 4 are reached does the necessity of intervention drop away. Recall that they apply, respectively, when "the Government elects not to proceed" and "[w]hether or not the Government proceeds." See

432 UNITED STATES EX REL. POLANSKY *v.* EXECUTIVE
HEALTH RESOURCES, INC.

Opinion of the Court

*supra*, at 427.   By contrast, Paragraph 2 is explicitly hooked to Paragraph 1, which applies only when "the Government proceeds."

And just to pile on a bit, the Government's alternative construction would create surplusage twice over.   Consider first the "[w]hether or not" introductory clause of Paragraph 4, noted just above.   On the Government's view, that clause has no function: A provision lacking it would likewise apply "whether or not" the Government chose to intervene.   The Government essentially concedes the point, urging only that Paragraph 4's preface is "the sort of redundancy that is common in statutory drafting."   Brief for United States 25 (internal quotation marks omitted).   Similarly for the "subject to . . . paragraph (2)" proviso in Paragraph 1.   On the Government's view, Congress need not have included that language, because every *qui tam* action (not just those described in Paragraph 1) is "subject to" Paragraph 2's limits. Again, the Government's only response is that "Congress sometimes includes language that could be viewed as 'redundant.'"   *Id.*, at 22.   Yes, sometimes.   But on top of everything else, the Government's double violation of the interpretive principle that "every clause and word of a statute" should have meaning, *Montclair* v. *Ramsdell*, 107 U. S. 147, 152 (1883), dooms the view that Paragraph 2 applies even when the Government has not intervened.   The paragraph does not then apply—which means that the Government cannot then file a (2)(A) motion to dismiss.

B

At the same time, a straightforward reading of the FCA refutes Polansky's (and the dissent's) position—that Paragraph 2 (and also Paragraph 1) applies only when the Government's intervention occurs during the seal period.   Recall the way the statute works: The Government can intervene at that early time—but so too it can "intervene at

a later date upon a showing of good cause."    § 3730(c)(3); see
*supra*, at 427.  The consequence of a successful motion to
intervene, in the FCA context as in any other, is to turn the
movant into a party.   See *Eisenstein*, 556 U. S., at 933–934.
And once the Government becomes a party, it (alongside the
relator) does what parties do: It "proceeds with the ac-
tion."   That quoted phrase, you'll recall, is the trigger for
Paragraph 1: When the Government "proceeds with the ac-
tion," it assumes "primary responsibility" for the case's
"prosecuti[on]."    And as shown above, whenever that is true,
Paragraph 2 kicks in too.   See *supra*, at 430–432.   So the
right to dismiss under Subparagraph (2)(A) attends a later
intervention, just as it does an earlier one.   Either way, the
Government becomes a party, proceeding with the action; so
either way, it acquires the right to dismiss.[3]

    Polansky's contrary argument (echoed in the dissent)
mainly relies on the clause in Paragraph 3 telling the court
that it may not "limit[ ] the status and rights" of the relator
when it approves a post-seal-period intervention motion.
See Brief for Polansky 23; *post*, at 445.    That clause, he says,
prevents the court from giving the Government "primary
responsibility" over the suit, including the power to dismiss.
But on that reading, the Paragraph 3 clause would effectively

───────────

[3] Polansky (joined by the dissent) briefly tries to subvert the above
reading at the first step, by arguing that when the Government intervenes
after the seal period, it somehow does not "proceed with the action"—and
so neither Paragraph 1 nor Paragraph 2 kicks in.   Brief for Polansky 23
(arguing that Paragraph 3 enables the Government only to "intervene,"
and not also to "proceed with the action"); see *post*, at 446 (same).   But
the phrase "proceed with the action" has no special statutory meaning
and is no arcane term of art.   It is just the consequence of anyone—the
Government or the relator—becoming a party.   See Webster's Third New
International Dictionary 1807 (1986) (defining "proceed" as "carry on a
legal action").   Regardless whether intervention is pre-seal or post-seal,
the Government at that moment becomes a party; and when the Govern-
ment becomes a party, it (necessarily) "proceeds with the action."

434 UNITED STATES EX REL. POLANSKY *v.* EXECUTIVE
HEALTH RESOURCES, INC.

Opinion of the Court

negate Paragraphs 1 and 2. The Paragraph 3 clause would prevent the Government, even though now "proceed[ing]" with the case, from acquiring the control that Paragraphs 1 and 2 afford in that circumstance. Polansky's construction would thus put the statute "at war with itself." *United States* v. *American Tobacco Co.*, 221 U. S. 106, 180 (1911). The statute would direct one result (the Government assuming the primary role upon intervening) while telling the court not to allow that state of affairs. The better reading makes the instruction to the court congruent with the background operation of the statute. The clause tells the court not to impose additional, extra-statutory limits on the relator when granting the Government's post-seal-period motion to intervene. See *United States ex rel. CIMZNHCA, LLC* v. *UCB, Inc.*, 970 F. 3d 835, 854 (CA7 2020) (explaining that the Paragraph 3 clause "instructs the district court not to limit the relator's 'status and rights' as they are defined by" Paragraphs 1 and 2). In that way, Paragraph 3 ensures that the Government will get no special benefit from the court's involvement in a later intervention: The parties will occupy the same positions as they would have if the Government had intervened in the seal period.

That seal-agnostic view of intervention's effects also fits the FCA's Government-centered purposes. In Polansky's proposed world, the Government has primary control of the action if it intervenes in the seal period, but the relator has primary control if the intervention occurs later on. See Brief for Polansky 17. But in both cases, the Government's interest in the suit is the same—and is the predominant one. That interest is typically to redress injuries against the Government, through a suit "brought in [the Government's] name." § 3730(b)(1). Or else, as here, that interest is to obtain dismissal of the suit because it will likely cost the Government more than it is worth. Either way, that interest does not diminish in importance because the Government

waited to intervene. Congress decided not to make seal-period intervention an on-off switch. It knew that circumstances could change and new information come to light. So Congress enabled the Government, in the protection of its own interests, to reassess *qui tam* actions and change its mind. See S. Rep. No. 99–345, p. 26 (1986) (explaining that the Government should have a continuing chance to intervene because "new evidence" might cause it to "reevaluate its initial assessment"). When it does so, nothing about the statute's objectives suggests that the Government should have to take a back seat to its co-party relator. The suit remains, as it was in the seal period, one to vindicate the Government's interests.

## III

We thus arrive at this case's second question: When the Government, having properly intervened, seeks to dismiss an FCA action over a relator's objection, what standard should a district court use to assess the motion? The Third Circuit held that the appropriate standard derives from Federal Rule 41(a), which governs voluntary dismissals in ordinary civil litigation. See 17 F. 4th, at 389–391. Under that Rule, the standard varies with the case's procedural posture. If the defendant has not yet served an answer or summary-judgment motion, the plaintiff need only file a notice of dismissal. But once that threshold has been crossed—as in this case—dismissal requires a "court order, on terms that the court considers proper." Fed. Rule Civ. Proc. 41(a)(2). Again, both the Government and Polansky object from different directions. The Government thinks it has essentially unfettered discretion to dismiss; Polansky proposes a complicated form of arbitrary-and-capricious review, with a burden-shifting component. But again, the Third Circuit's Goldilocks position is the legally right one. A district court should assess a (2)(A) motion to dismiss using Rule 41's standards. And in most FCA cases, as the Court of Appeals

436    UNITED STATES EX REL. POLANSKY *v.* EXECUTIVE
HEALTH RESOURCES, INC.

Opinion of the Court

suggested, those standards will be readily satisfied. See 17 F. 4th, at 390–391, and n. 18.

The reason for alighting on Rule 41 is not complicated: The Federal Rules are the default rules in civil litigation, and nothing warrants a departure from them here. As Rule 1 states: "These rules govern the procedure in all civil actions and proceedings in the United States district courts" (with specified exceptions not relevant here). Of course, Congress may override that command when it wishes. But we do not lightly infer that Congress has done so; and silence on the subject is seldom enough. See *Jones* v. *Bock*, 549 U. S. 199, 212 (2007); *Marek* v. *Chesny*, 473 U. S. 1, 11–12 (1985). Here, nothing in the FCA suggests that Congress meant to except *qui tam* actions from the usual voluntary dismissal rule. To the contrary, the FCA's many cross-references to the Rules suggest that their application is the norm. See, *e. g.*, §3732(a) (requiring that a summons in an FCA action comply with the Rules); §§3730(b)(2)–(3) (requiring service to the Government and defendant "pursuant to Rule 4"). And this Court has made clear that various Rules not specifically mentioned—in particular, those dealing with discovery—also apply. See *Eisenstein*, 556 U. S., at 933–934. As a practical matter, the Federal Rules apply in FCA litigation in courts across the country every day. There is no reason to make an exception for the one about voluntary dismissals.

The application of Rule 41 in the FCA context will differ in two ways from the norm. The first pertains to procedure. The FCA requires notice and an opportunity for a hearing before a Subparagraph (2)(A) dismissal can take place. So the district court must use that procedural framework to apply Rule 41's standards.[4] The second pertains to the set

---

[4] The Court of Appeals briefly addressed the purpose of a hearing when dismissal is sought before an answer is filed. See 17 F. 4th 376, 390, n. 16 (CA3 2021). In that context, Rule 41 entitles the movant to a dismissal; the district court has no adjudicatory role. So what is the court supposed

of interests the court should consider in ruling on a post-answer motion. In non-FCA cases, Rule 41(a)(2)'s "proper terms" analysis focuses on the defendant's interests: The court mainly addresses whether that party's "commitment of time and money" militates against dismissal. *Cooter & Gell* v. *Hartmarx Corp.*, 496 U. S. 384, 397 (1990). But in the FCA context, the "proper terms" assessment is more likely to involve the relator. For all relators faced with a (2)(A) motion want their actions to go forward, and many have by then committed substantial resources. Part of the district court's task is to consider their interests. Cf. 9 C. Wright & A. Miller, Federal Practice and Procedure § 2364, p. 554 (4th ed. 2022) (explaining that a court, in applying Rule 41, "should endeavor to ensure that substantial justice is accorded to all parties").

The Third Circuit, though, was right to note that (2)(A) motions will satisfy Rule 41 in all but the most exceptional cases. See 17 F. 4th, at 390–391, and n. 18. This Court has never set out a grand theory of what that Rule requires, and we will not do so here. The inquiry is necessarily "contextual." 9 Wright & Miller § 2364, at 599. And in this context, the Government's views are entitled to substantial deference. A *qui tam* suit, as we have explained, is on behalf of and in the name of the Government. The suit alleges injury to the Government alone. And the Government, once it has intervened, assumes primary responsibility for the action. Given all that, a district court

to do at the hearing the FCA requires? The Third Circuit suggested that Rule 41's standards "rest atop the foundation of bedrock constitutional constraints on Government action." *Id.*, at 390, n. 16. So a hearing, whether pre- or post-answer, might inquire into allegations that a dismissal "violate[s] the relator's rights to due process or equal protection." *Ibid.* But because Polansky has not raised a claim of that sort, we do not consider the circumstances in which, or procedures by which, a court should find the Constitution to prevent the Government from dismissing a *qui tam* action.

438    UNITED STATES EX REL. POLANSKY *v.* EXECUTIVE
HEALTH RESOURCES, INC.

Opinion of the Court

should think several times over before denying a motion to dismiss. If the Government offers a reasonable argument for why the burdens of continued litigation outweigh its benefits, the court should grant the motion. And that is so even if the relator presents a credible assessment to the contrary.

In light of those principles, this case is not a close call. A district court's Rule 41 order is generally reviewable under an abuse-of-discretion standard, and the Third Circuit properly applied that standard here. But in the interest of providing guidance, it might be useful for us to put that standard of review to the side, and simply to say that the District Court got this one right. The Government, in moving to dismiss, enumerated the significant costs of future discovery in the suit, including the possible disclosure of privileged documents. At the same time, the Government explained in detail why it had come to believe that the suit had little chance of success on the merits. Polansky vigorously disputed the latter point, claiming that the Government was "leaving billions of dollars of potential recovery on the table." 17 F. 4th, at 393 (emphasis deleted). But that competing assessment, the District Court thought, could not outweigh the Government's reasonable view of the suit's costs and benefits. We agree. The Government gave good grounds for thinking that this suit would not do what all *qui tam* actions are supposed to do: vindicate the Government's interests. Absent some extraordinary circumstance, that sort of showing is all that is needed for the Government to prevail on a (2)(A) motion to dismiss.

## IV

The Government may move to dismiss an FCA action under Subparagraph (2)(A) whenever it has intervened—whether during the seal period or later on. The applicable standards for deciding such a motion are those set out in

Federal Rule 41. Under that Rule, the Government was entitled to dismiss this *qui tam* action. We therefore affirm in all respects the judgment below.

*It is so ordered.*

## APPENDIX

### "§3730. Civil actions for false claims

"(a) RESPONSIBILITIES OF THE ATTORNEY GENERAL.—The Attorney General diligently shall investigate a violation under section 3729. If the Attorney General finds that a person has violated or is violating section 3729, the Attorney General may bring a civil action under this section against the person.

"(b) ACTIONS BY PRIVATE PERSONS.—(1) A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government. The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.

"(2) A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure. The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders. The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.

"(3) The Government may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal under paragraph (2). Any such motions may be supported by affidavits or other submissions in cam-

era.    The defendant shall not be required to respond to any complaint filed under this section until 20 days after the complaint is unsealed and served upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure.

"(4)  Before the expiration of the 60-day period or any extensions obtained under paragraph (3), the Government shall–

"(A)  proceed with the action, in which case the action shall be conducted by the Government; or

"(B)  notify the court that it declines to take over the action, in which case the person bringing the action shall have the right to conduct the action.

"(5)  When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action.

"(c)  RIGHTS OF THE PARTIES TO QUI TAM ACTIONS.—(1) If the Government proceeds with the action, it shall have the primary responsibility for prosecuting the action, and shall not be bound by an act of the person bringing the action. Such person shall have the right to continue as a party to the action, subject to the limitations set forth in paragraph (2).

"(2)(A)  The Government may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion.

"(B)  The Government may settle the action with the defendant notwithstanding the objections of the person initiating the action if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances.    Upon a showing of good cause, such hearing may be held in camera.

"(C)  Upon a showing by the Government that unrestricted participation during the course of the litigation by the person initiating the action would interfere with or unduly delay the Government's prosecution of the case, or would be repeti-

tious, irrelevant, or for purposes of harassment, the court may, in its discretion, impose limitations on the person's participation, such as—

"(i) limiting the number of witnesses the person may call;
"(ii) limiting the length of the testimony of such witnesses;
"(iii) limiting the person's cross-examination of witnesses; or
"(iv) otherwise limiting the participation by the person in the litigation.

"(D) Upon a showing by the defendant that unrestricted participation during the course of the litigation by the person initiating the action would be for purposes of harassment or would cause the defendant undue burden or unnecessary expense, the court may limit the participation by the person in the litigation.

"(3) If the Government elects not to proceed with the action, the person who initiated the action shall have the right to conduct the action. If the Government so requests, it shall be served with copies of all pleadings filed in the action and shall be supplied with copies of all deposition transcripts (at the Government's expense). When a person proceeds with the action, the court, without limiting the status and rights of the person initiating the action, may nevertheless permit the Government to intervene at a later date upon a showing of good cause.

"(4) Whether or not the Government proceeds with the action, upon a showing by the Government that certain actions of discovery by the person initiating the action would interfere with the Government's investigation or prosecution of a criminal or civil matter arising out of the same facts, the court may stay such discovery for a period of not more than 60 days. Such a showing shall be conducted in camera. The court may extend the 60-day period upon a further showing in camera that the Government has pursued the

criminal or civil investigation or proceedings with reasonable diligence and any proposed discovery in the civil action will interfere with the ongoing criminal or civil investigation or proceedings.

"(5) Notwithstanding subsection (b), the Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty.  If any such alternate remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section.  Any finding of fact or conclusion of law made in such other proceeding that has become final shall be conclusive on all parties to an action under this section.  For purposes of the preceding sentence, a finding or conclusion is final if it has been finally determined on appeal to the appropriate court of the United States, if all time for filing such an appeal with respect to the finding or conclusion has expired, or if the finding or conclusion is not subject to judicial review."

Justice Kavanaugh, with whom Justice Barrett joins, concurring.

I join the Court's opinion in full.  I add only that I agree with Justice Thomas that "[t]here are substantial arguments that the *qui tam* device is inconsistent with Article II and that private relators may not represent the interests of the United States in litigation."  *Post*, at 449 (dissenting opinion).  In my view, the Court should consider the competing arguments on the Article II issue in an appropriate case.

Justice Thomas, dissenting.

In my view, the text and structure of the False Claims Act (FCA), 31 U. S. C. §§ 3729–3733, afford the Government no power to unilaterally dismiss a pending *qui tam* action after

Thomas, J., dissenting

it has "decline[d] to take over the action" from the relator at its outset. §3730(b)(4)(B). Thus, I would vacate the judgment below and remand for the Third Circuit to consider the serious constitutional questions that may affect the disposition of the Government's motion to dismiss petitioner's *qui tam* suit. Because the Court instead affirms, I respectfully dissent.

I

The FCA provides that private parties known as relators may bring *qui tam* suits "for [themselves] and for the United States Government." §3730(b)(1). It then sets out a reticulated scheme to govern the initiation of a *qui tam* suit, see §3730(b); the parties' procedural rights during the suit, see §3730(c); and the rights of the parties to any proceeds at the end of the suit, see §3730(d). See also *ante*, at 424–427, 439–442. The main structural feature of this scheme is the so-called seal period: a window of time at the start of every FCA *qui tam* action during which the suit is on hold and the Government must "elect" whether "to intervene and proceed with the action," §3730(b)(2), or, alternatively, to "declin[e] to take over the action" and allow the relator to proceed, §3730(b)(4)(B).

This case requires us to decide whether the Government enjoys the same panoply of procedural rights when it takes over an action during the seal period and when (as here) it intervenes in the action "at a later date" after the relator has "proceed[ed] with the action." §3730(c)(3). Today, the Court holds that the Government has all of the same procedural rights in both circumstances, including the right to "dismiss the action notwithstanding the objections of the [relator]." §3730(c)(2)(A). I would instead hold that the structure of the FCA's *qui tam* provisions and the clear text of §3730(c)(3) do not permit the Government to seize the reins from the relator to unilaterally dismiss the suit after declining to proceed with an action during the seal period.

444    UNITED STATES EX REL. POLANSKY *v.* EXECUTIVE
HEALTH RESOURCES, INC.

THOMAS, J., dissenting

To bring out the statutory structure, it is helpful to take the FCA's *qui tam* provisions from the top. Under § 3730(b)(2), the first step in a *qui tam* suit is for the relator to file the complaint *in camera* and under seal, serving it on the Government but not the defendant. That filing starts the clock on a 60-day window in which "[t]he Government may elect to intervene and proceed with the action." § 3730(b)(2). The Government may move to extend this seal period for cause, see § 3730(b)(3), but, ultimately, the Government faces a binary choice. It must either: "(A) proceed with the action, in which case the action shall be conducted by the Government; or (B) notify the court that it declines to take over the action, in which case the [relator] shall have the right to conduct the action." § 3730(b)(4). Thus, under § 3730(b)(4), the Government's seal-period choice to "proceed with the action" or not determines who "shall" "conduct" the suit—the Government or the relator.

Section 3730(c) picks up at this critical juncture, defining the respective litigating rights of the Government and the relator based on the Government's choice to "proceed with the action" or not. First, paragraph (1) of subsection (c) (or, paragraph (c)(1)) provides: "If the Government proceeds with the action, it shall have the primary responsibility for prosecuting the action," but the relator "shall have the right to continue as a party to the action, subject to [paragraph (c)(2)'s] limitations."[1] As used here, the phrase "proceeds with the action" naturally refers to the same seal-period choice for which § 3730 uses the same phrase in paragraph (b)(2) and subparagraph (b)(4)(A). And the Government "hav[ing] the primary responsibility for prosecuting the action" appears synonymous with the Government "conduct-

---

[1] The remainder of paragraphs (c)(1) and (c)(2) largely describe the contours of the Government's primary responsibility vis-à-vis the relator's circumscribed litigation rights. I agree with the Court's holding that paragraph (c)(2) is clearly subordinate to paragraph (c)(1). See *ante,* at 430–432.

[ing]" the action under subparagraph (b)(4)(A).  See 3 Oxford English Dictionary 691 (2d ed. 1989) (defining "conduct" as "[t]o lead, command, direct, manage").

By contrast, paragraph (c)(3) provides: "If the Government elects not to proceed with the action, the [relator] shall have the right to conduct the action."  The conditional clause of this sentence is a clear reference to the seal-period "elect[ion]" described in paragraph (b)(2).[2]  Likewise, the result clause plainly echoes "the right to conduct the action" referred to under subparagraph (b)(4)(B), which the relator acquires when the Government does not "proceed with the action" under subparagraph (b)(4)(A) at the end of the seal period.

In short, the initial clauses of paragraphs (c)(1) and (c)(3) track subparagraphs (b)(4)(A) and (b)(4)(B) and point back to the Government's seal-period choice to "proceed with the action" or not.  If the Government chooses to proceed with the action under §3730(b)(4)(A), then paragraph (c)(1) applies, along with the conditions of paragraph (c)(2).  Conversely, if the Government elects not to proceed with the action under §3730(b)(4)(B), then paragraph (c)(3) applies.

To be sure, the last sentence of paragraph (c)(3) provides: "When [the relator] proceeds with the action, the court, without limiting the status and rights of the [relator], may nevertheless permit the Government to intervene at a later date upon a showing of good cause."  But this sentence is not, as the majority reads it, a secret pass in paragraph (c)(3) that leads the parties back to their relative rights under paragraphs (c)(1) and (c)(2).  See *ante*, at 432–435.  The sentence itself makes that clear by cautioning that the Government's later intervention may not "limi[t] the status and rights of the [relator]."  §3730(c)(3).  Read in the context of §§3730(b)(4) and (c), this "without limiting" condition clearly

──────────

[2] One other provision of the FCA refers to the Government "making an election under section 3730(b)," which likewise clearly signifies the seal-period decision.  31 U. S. C. §3733(a)(1).

446    UNITED STATES EX REL. POLANSKY *v.* EXECUTIVE
HEALTH RESOURCES, INC.

THOMAS, J., dissenting

preserves the relator's status as an autonomous litigant and the "right to conduct the action" that he acquired when the Government declined to take over the action at its inception. In other words, the plain import of the condition is that the relator keeps "the right to conduct the action" under §§ 3730(b)(4)(B) and (c)(3), as opposed to being demoted to paragraph (c)(1)'s inferior "right to continue as a party" with the restrictions set out in paragraph (c)(2).

The majority short-circuits this straightforward conclusion by essentially stipulating that the Government "proceeds with the action"—and thus activates paragraphs (c)(1) and (c)(2)—whenever it is a party, regardless of when and how it *became* a party. See *ante*, at 433, and n. 3. Nothing in the FCA's overall text or structure favors that interpretation. Nor does the text of paragraph (c)(3). When that provision describes the Government "interven[ing]" after the seal period, it does not use the phrase "proceed with the action" (except in reference to the relator). Cf. § 3730(b)(2) ("The Government may elect to intervene *and* proceed with the action" (emphasis added)). Nor is the majority's understanding compelled by the ordinary meaning of the term "proceed." To "proceed" means to move forward, generally with the distinctive connotation of moving forward *from a particular point*. See 12 Oxford English Dictionary, at 544 ("[t]o go, move, or travel forward; to make one's way onward; *esp.* to move onward after interruption or stoppage, or after reaching a certain point"). That idea fits the FCA like a glove. The Government "proceeds with the action"—as that phrase is used in §§ 3730(b)(2), (b)(4)(A), (c)(1), and (c)(3)—if it chooses to move forward with an action from the seal period, which is specifically set up for the Government to decide whether to "proceed with the action," § 3730(b)(2).

The majority's interpretation of "proceeds with the action" in turn dictates an unnatural reading of paragraph (c)(3)'s "without limiting" condition. When the FCA says that the Government's belated intervention may not "limi[t]" the rela-

tor's "status and rights," it naturally means the status and rights that the relator actually enjoyed under paragraph (c)(3) immediately before the Government sought to intervene. By contrast, to accommodate its misreading of "proceeds with the action," the majority is compelled to read paragraph (c)(3) to protect only the status and rights that the relator *would* have enjoyed in an alternative timeline where the Government intervened during the seal period and paragraph (c)(3) never came into play at all. See *ante*, at 434. That reading is counterintuitive, to say the least.

Nor is that the end of the problems with the majority's "seal-agnostic view." *Ibid.* Immediately below subsection (c), §§ 3730(d)(1) and (d)(2) establish two alternative ranges for the relator's share of any recovery at the end of a *qui tam* action. Like the parties' litigation rights under paragraphs (c)(1) and (c)(3), those ranges depend on whether the Government has "proceed[ed] with" the action or not. "If the Government proceeds with an action brought . . . under subsection (b)," the relator is usually entitled to between 15 and 25 percent of any recovery. § 3730(d)(1). Conversely, "[i]f the Government does not proceed with [the] action," the relator is entitled to 25 to 30 percent. § 3730(d)(2). Given the majority's view that intervention under paragraph (c)(3) counts as "proceed[ing] with the action," it follows that even an eleventh-hour intervention by the Government would automatically shunt the relator out of paragraph (d)(2)'s more generous range and into paragraph (d)(1)'s less generous one. Surely, that result would qualify as "limiting the [relator's] status and rights." § 3730(c)(3).

The majority bolsters its tenuous textual and structural case with an appeal to "the FCA's Government-centered purposes." *Ante*, at 434. But "every statute purposes, not only to achieve certain ends, but also to achieve them by particular means." *Freeman* v. *Quicken Loans, Inc.*, 566 U. S. 624, 637 (2012) (alteration and internal quotation marks omitted). And, while it is certainly the FCA's ultimate goal

448     UNITED STATES EX REL. POLANSKY *v.* EXECUTIVE
HEALTH RESOURCES, INC.

THOMAS, J., dissenting

to "redress injuries against the Government," *ante*, at 434, its chosen means is to empower private parties to seek redress of those injuries through litigation that the Government does not necessarily control and might not have brought if left to its own devices. Allowing the relator to maintain the suit after the Government has declined its initial opportunity to take it over (even if only to dismiss it) is fully consistent with the FCA.

Indeed, the FCA's history undermines the majority's free-floating account of its "purposes." As enacted in 1863, the original FCA contained no provision for the Government to intervene in a relator's suit *at all*. See 12 Stat. 698. In 1943, Congress first gave the Government that opportunity by creating the 60-day seal period, which it set up to function as the very "on-off switch" the majority seems to consider implausible, *ante*, at 435: Either the Government intervened during the seal period and assumed sole control of the action, or it did not intervene and was permanently excluded from the action. See 57 Stat. 608–609. Finally, in 1986, Congress revamped the FCA into its modern form, under which (as never before) the Government and the relator can litigate side by side as co-plaintiffs in the same action. In creating this possibility, Congress tweaked both halves of the previous regime in roughly parallel ways. If the Government intervenes during the seal period, paragraphs (c)(1) and (c)(2) now permit the relator to remain a party and play a role in the litigation—but only a subordinate role. Conversely, if the Government does not intervene and proceed with the action during the seal period, it is not forever barred from taking a litigating role—but, if it intervenes later, it does not downgrade the relator's "status and rights" to those of a second-chair litigant. §3730(c)(3).

In sum, the text, structure, and history of the FCA all point to the same conclusion. The FCA affords the Government no statutory right to unilaterally dismiss a declined action when it intervenes under §3730(c)(3).

II

However, the text and structure of the FCA are not the
end of the story.   Defendant-respondent has pointed to seri-
ous constitutional questions that might affect the disposition
of the Government's motion here.   At the same time, it is
not clear that the parties have examined these questions in
their full complexity, and the Third Circuit's reading of
§ 3730(c) gave it no reason to do so.   Therefore, after holding
that the Government could not invoke the dismissal author-
ity of § 3730(c)(2)(A) as a statutory matter, I would remand
this case for the Third Circuit to consider whether the Con-
stitution nonetheless requires the dismissal of petitioner's
suit.

The FCA's *qui tam* provisions have long inhabited some-
thing of a constitutional twilight zone.   There are substan-
tial arguments that the *qui tam* device is inconsistent with
Article II and that private relators may not represent the
interests of the United States in litigation.   Because "[t]he
entire 'executive Power' belongs to the President alone,"
*Seila Law LLC* v. *Consumer Financial Protection Bureau*,
591 U. S. ——, —— (2020), it can only be exercised by the
President and those acting under him, see *id.*, at ——
(Thomas, J., concurring in part and dissenting in part).
And, as "[a] lawsuit is the ultimate remedy for a breach of
the law," the Court has held that "conducting civil litigation
. . . for vindicating public rights" of the United States is an
"executive functio[n]" that "may be discharged only by per-
sons who are 'Officers of the United States'" under the Ap-
pointments Clause, Art. II, § 2, cl. 2.   *Buckley* v. *Valeo*, 424
U. S. 1, 138–140 (1976) (*per curiam*) (some internal quotation
marks omitted).   A private relator under the FCA, however,
is not "appointed as an officer of the United States" under
Article II.   *Cochise Consultancy, Inc.* v. *United States
ex rel. Hunt*, 587 U. S. ——, —— (2019).   It thus appears to
follow that Congress cannot authorize a private relator to

wield executive authority to represent the United States' interests in civil litigation.

The potential inconsistency of *qui tam* suits with Article II has been noticed for decades.  See, *e. g.*, *Riley* v. *St. Luke's Episcopal Hospital*, 252 F. 3d 749, 758–775 (CA5 2001) (en banc) (Smith, J., dissenting); J. Blanch, Note, The Constitutionality of the False Claims Act's *Qui Tam* Provision, 16 Harv. J. L. & Pub. Pol'y 701, 736–767 (1993); Constitutionality of the Qui Tam Provisions of the False Claims Act, 13 Op. OLC 207, 221–224, 228–232 (1989).  The primary counterargument has emphasized the long historical pedigree of *qui tam* suits, including the fact that the First Congress passed a handful of *qui tam* statutes.  See, *e. g.*, *Vermont Agency of Natural Resources* v. *United States ex rel. Stevens*, 529 U. S. 765, 801 (2000) (Stevens, J., dissenting); *Riley*, 252 F. 3d, at 752–753 ("[H]istory alone resolves . . . whether the qui tam provisions in the FCA violate Article II").  "Standing alone," however, "historical patterns cannot justify contemporary violations of constitutional guarantees," *Marsh* v. *Chambers*, 463 U. S. 783, 790 (1983), even when the practice in question "covers our entire national existence and indeed predates it," *Walz* v. *Tax Comm'n of City of New York*, 397 U. S. 664, 678 (1970).  Nor is enactment by the First Congress a guarantee of a statute's constitutionality.  See *Marbury* v. *Madison*, 1 Cranch 137 (1803).  Finally, we should be especially careful not to overread the early history of federal *qui tam* statutes given that the Constitution's creation of a separate Executive Branch coequal to the Legislature was a structural departure from the English system of parliamentary supremacy, from which many legal practices like *qui tam* were inherited.  See S. Prakash, The Chief Prosecutor, 73 Geo. Wash. L. Rev. 521, 589 (2005) (noting that, for this reason, "we ought to be cautious about importing English constraints or exceptions to the executive power, when those limitations might be based on the principle of parliamentary supremacy").

In short, there is good reason to suspect that Article II does not permit private relators to represent the United States' interests in FCA suits. However, even if that is true, the follow-on implications may not be as straightforward as they appear at first glance. Under the FCA, the relator brings suit "*for [himself]*" as well as "for the United States Government." § 3730(b)(1) (emphasis added). In *Stevens*, we read this language "as effecting a partial assignment of the Government's damages claim," which provided "the theoretical justification" for our holding "that a *qui tam* relator under the FCA has Article III standing." 529 U. S., at 773, 778. For that holding to make sense, it appears that this assignment must be effective no later than the point in time at which the Government declines to intervene in the seal period and the relator may proceed with the action as the only plaintiff in court.

Under *Stevens*' partial-assignment theory, it is not immediately clear that the Government may dismiss *the relator's* interest in a *qui tam* suit, even assuming that the relator's representation of *the United States*' interest is unconstitutional. Whether the Government may do so may depend on the implicit conditions of the assignment; conceivably, it may also depend on whether the assignment is severable from the FCA's attempt to vest the authority to represent the United States in litigation in a party outside the Executive Branch.

In examining these issues, moreover, it may be necessary to consider a question that *Stevens* left unaddressed: What is the source of Congress' power to effect partial assignments of the United States' damages claims? One candidate might be the Necessary and Proper Clause, Art. I, § 8, cl. 18; but, if *qui tam* suits violate Article II, then it appears unlikely that any assignment effectuated by the FCA's *qui tam* provisions could be considered "necessary and proper for carrying into Execution" any constitutional power. See *Gonzales* v. *Raich*, 545 U. S. 1, 60 (2005) (THOMAS, J., dissenting) ("To act under the Necessary and Proper Clause," "Con-

gress must select a means" not "'prohibited' by the Constitu-
tion" or "inconsistent with 'the letter and spirit of the
Constitution'" (quoting *McCulloch* v. *Maryland*, 4 Wheat.
316, 421 (1819); alteration omitted)).   Alternatively, such as-
signments might rely at least partly on the Property Clause,
which empowers Congress "to dispose of and make all need-
ful Rules and Regulations respecting the Territory or other
Property belonging to the United States," and which may
include the power to assign claims for damages as "other
Property."   Art. IV, § 3, cl. 2; see also D. Engdahl, The Basis
of the Spending Power, 18 Seattle U. L. Rev. 215, 256–257
(1995) ("The Article IV Property Clause is most familiar, of
course, in its application to landed property, . . . but it has
been recognized as applying to personal property as well").

In any event, these are complex questions, which I would
leave for the parties and the court below to consider after
resolving the statutory issues that have been the focus of
this case up to now.[3]   Therefore, I would vacate the judg-
ment below granting the Government's motion to dismiss
and remand for the Third Circuit to consider the correct dis-
position of that motion in light of any applicable constitu-
tional requirements.

---

[3] For two reasons, the fact that my reading of § 3730 would require con-
fronting these constitutional questions in this case does not counsel in
favor of a different interpretation.   First, principles of constitutional
avoidance can operate only "in the choice of fair alternatives," not when
the text and structure of a statute point to a clear answer.   *United States*
v. *Rumely*, 345 U. S. 41, 45 (1953); see also *Skilling* v. *United States*, 561
U. S. 358, 423 (2010) (Scalia, J., concurring in part and concurring in judg-
ment).   Second, the force of constitutional-avoidance principles is inher-
ently limited where, as here, the choice of interpretations is tangential to
the constitutional questions at stake.   On any interpretation, the FCA
purports to authorize private parties to represent the United States in
litigation.   That basic feature of the *qui tam* device must be the core of
any Article II objection to the FCA.   If it is constitutionally problematic,
then the majority's interpretation of the FCA does not cure the problem;
on the other hand, if *qui tam* is constitutional, then there is no constitu-
tional problem to avoid.

REPORTER'S NOTE

The attached opinion has been revised to reflect the usual publication and citation style of the United States Reports. The revised pagination makes available the official United States Reports citation in advance of publication. The syllabus has been prepared by the Reporter of Decisions for the convenience of the reader and constitutes no part of the opinion of the Court. A list of counsel who argued or filed briefs in this case, and who were members of the bar of this Court at the time this case was argued, has been inserted following the syllabus. Other revisions may include adjustments to formatting, captions, citation form, and any errant punctuation. The following additional edits were made:

None